EDDIE ARTHUR CROSS, SR. A/K/A EDDIE ARTHUR CROSS V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-404-CR

NO. 2-02-405-CR

APPELLANT

EDDIE ARTHUR CROSS, SR.

A/K/A EDDIE ARTHUR CROSS 

V.

THE STATE OF TEXAS STATE

------------

FROM THE 372
ND
 DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I. I
NTRODUCTION

A jury found appellant Eddie Arthur Cross, Sr. guilty of delivery of a controlled substance in an amount less than one gram and possession with intent to deliver a controlled substance in an amount more than four grams but less than two hundred grams. In five points, appellant challenges the factual sufficiency of the evidence to support his convictions and claims the trial court erred in allowing the State to question him about the veracity of the State’s witness over objection.  We affirm.

II. F
ACTUAL
 
AND
 P
ROCEDURAL
 B
ACKGROUND

On March 4, 1998, Officer Andre L. Smith and five other officers of the Fort Worth Police Department’s Narcotics Division set up an undercover “buy/bust” sting operation.  In preparation for the “buy/bust” operations, Officer Smith photocopied the cash that he would use in any undercover drug purchases, so the money could be identified if an arrest were made.  Officer Smith went to the area around the intersection of Lancaster and Riverside in Fort Worth, Texas, around noon dressed in plain clothes and driving an unmarked car.  The day was sunny and clear.

Upon approaching 2400 Cypress Street, Officer Smith observed a black male, who was later identified as Robert Adell, and signaled to him.  After Adell approached, Officer Smith asked him for a “dime,” which is street slang for ten dollars worth of crack cocaine.  Adell replied that he knew a place where he could take Officer Smith to make the purchase.  Addell got into Smith’s car and directed him to the 1300 block of Bessie Street, near Al’s Rec Center and an apparent vacant house at 1311 Bessie Street.

Officer Smith testified that when he pulled up to the curb, he could see two or three individuals in front of the house.  Adell asked Officer Smith for ten dollars, and Officer Smith handed him the money from the photocopied funds.  Adell left the car and walked approximately fifteen feet to a second man, whom Officer Smith identified as appellant.  Officer Smith testified that after speaking briefly with Adell, appellant took the ten dollar bill, turned, and walked by himself to the porch of the apparent vacant house, another five feet away.  As he sat in the car by the curb, Officer Smith watched appellant reach into a mailbox, located near the door, with his right hand and pull out an object, which Officer Smith could not identify more clearly.  Appellant walked back down to Adell, opened his right hand, and offered the object to him.  Immediately after taking the object out of appellant’s hand, Adell walked directly back to Officer Smith’s car and got in.  As they drove away, Adell opened his hand and presented Officer Smith with what appeared to be and what later testing established was a rock of crack cocaine in a yellow plastic baggie. 

Officer Aaron Aguilar, Smith’s team member, had also monitored the undercover drug buy.  Officer Aguilar testified that he positioned his vehicle near the 1300 block of Bessie Street and watched from a distance as Officer Smith pulled up to the curb on Bessie and Adell got out.  He saw Addell approach a second man, whom he identified as appellant, and engage in “some type of hand-to-hand transaction” with him.  Appellant then turned away and walked out of Aguilar’s line of sight, only to return moments later and again engage in “some type of hand-to-hand transaction” with Adell.  Aguilar watched Adell reenter Officer Smith’s car and Officer Smith drive away.  Officer Aguilar testified no other person who matched appellant’s description entered the area even after Officer Smith left the scene.   

Officer Smith drove Adell back to where he had first picked him up and tipped him five dollars after Adell stated he “needed $5 for the hook up.” Officer Smith then notified the members of his team of the location and description of Adell and appellant.  Officer Smith described appellant as a real tall black male with an Afro wearing a white cap, white T-shirt, gray pants, and white tennis shoes.  Aguilar and two other officers approached the Bessie location and detained appellant, who, according to Aguilar, was the only person at the location that fit the description.  The officers also recovered a ten dollar bill appellant clutched in his hand, which matched the serial number of one of the photocopied ten dollar bills.  The team then took a Polaroid photograph of appellant, which they showed to Smith, who was waiting at a separate location.  Officer Smith identified appellant as the man involved in the drug buy with Adell, and appellant was formally arrested. 

Officer Smith provided Aguilar by radio with the address of the house and description of the mailbox from which appellant appeared to retrieve the drugs.  Aguilar searched the mailbox and recovered a Ziploc bag that contained smaller baggies, each holding a green and white rock-like substance that appeared to be crack cocaine.  Aguilar testified that from his training and experience as a narcotics officer, he recognized this sort of packaging as a “common way” in which drugs are packaged for sale and distribution.  Members of the arrest team also arrested Adell and recovered the five dollar bill he received from Smith.  No drugs were found on Adell.

At trial, John Brooks, a forensic scientist with the Fort Worth Police Department Crime Laboratory, testified that he examined and analyzed the substances obtained by the officers two days before trial.
(footnote: 1)  Brooks performed a Scott’s presumptive chemical test for cocaine on the substance sold to Officer Smith.  After the presumptive test proved positive for the possible presence of cocaine, Brooks conducted a gas chromatography mass spectrometry test (“GCMS”), which conclusively proved that the substance, which weighed 0.15 grams, contained cocaine.

The contents of the Ziploc bag taken from the mailbox by Officer Aguilar had been separated into two bags, “Lab Item 2A” and “Lab Item 2B,” which each contained several smaller plastic baggies of the substance.  Brooks performed six presumptive chemical tests on randomly selected substances in Lab Item 2A.  After all six presumptive tests proved positive for the possible presence of cocaine, Brooks conducted a GCMS on three of the six samples that were presumptively tested, and those conclusively contained cocaine as well.  The total weight of Lab Item 2A was 3.53 grams.  Brooks also performed six presumptive chemical tests on randomly selected substances in Lab Item 2B, which were all presumptive for the possible presence of cocaine.  The total weight of Lab Item 2B was 2.57 grams, making a total of “[a] [l]ittle over” six grams of substance seized from the mailbox that contained cocaine.

Further, Brooks testified that he does not know what other materials made up the substance that contained cocaine because he did not attempt to identify them, but they could be adulterants, dilutants, or byproducts.  Brooks also testified, however, that “in the [thirteen] conclusive tests that [he] performed on this particular narcotics case, that there were no adulterants or dilutants that were detected by [GCMS].”  

Appellant testified that he was dressed exactly as Officer Smith described him while standing outside talking to some “fellows” in front of Al’s Rec Center and 1311 Bessie Street around noon on March 4, 1998.  Appellant denied, however, possessing or delivering any drugs on the day in question.  Appellant also maintained that he was given the ten dollar bill by Eddie Faulkwell, his friend and known drug dealer, shortly before Officer Aguilar approached him for the purpose of buying Faulkwell a six-pack of beer.  

Following the jury’s finding of guilt on both counts, appellant was sentenced in accordance with the jury’s verdicts to twenty and fifty years’ confinement, the sentences to run concurrently.  This appeal followed. 

III. F
ACTUAL
 S
UFFICIENCY
 

In his first four points, appellant claims that the evidence is factually insufficient to support the verdict regarding: (1) appellant’s 
delivery
 of the controlled substance to Officer Smith through Adell; (2) the 
weight 
of the controlled substance found in the mailbox; and (3) the 
presence of adulterants or dilutants
 in the controlled substances found in the mailbox and those delivered to Officer Smith.  

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. 
 Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996).  Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.  
Johnson
, 23 S.W.3d at 11.  Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict
, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  
Id.
  In performing this review, we are to give due deference to the fact finder’s determinations. 
 Id.
 at 8-9; 
Clewis, 
922 S.W.2d at 136.  We may not substitute our judgment for that of the fact finder’s.  
Johnson
, 23 S.W.3d at 12.  Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice.  
Johnson
, 23 S.W.3d at 9, 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

To make a determination of factual insufficiency, a complete and detailed examination of all the relevant evidence is required.  
Johnson
, 23 S.W.3d at 12.  A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

A. Delivery

In his second point, appellant argues that the evidence is factually insufficient to support the conviction for delivery of a controlled substance because Officer Smith testified that he could not positively identify the “item” he saw appellant give Adell.  
The evidence shows, however, that Officer Smith witnessed appellant leave Adell, go to the porch, reach into the mailbox with his right hand, return to Adell, and offer Adell the object in his right hand.  Adell then proceeded directly to Officer Smith and gave him what he had taken from appellant, which was cocaine.  Moreover, when Adell was picked up, he possessed no drugs; instead, cocaine, in similar packaging, was later found in the mailbox.  We hold the evidence is factually sufficient to show that appellant delivered the controlled substance to Officer Smith.  We overrule appellant’s second point.

B. Weight

In his first point, appellant argues that the evidence is factually insufficient to show he possessed more than four grams but less than two hundred grams of cocaine with intent to distribute.  Specifically, appellant contends that the evidence is factually insufficient to support his conviction because Fort Worth Police Department forensic scientist John Brooks conclusively tested only three rocks of crack cocaine recovered from the mailbox and did not testify as to the total weight of the items conclusively tested
.

While Brooks specifically identified only three conclusive tests on the cocaine in the mailbox and one on the cocaine sold to Officer Smith, he also testified that he conducted “[thirteen] conclusive tests” in “this particular narcotics case.”  In addition, Books conducted twelve presumptive tests that indicated the possible presence of cocaine in the substances found in the mailbox.  Nevertheless, the number of conclusive tests conducted were less than the total number of rocks of cocaine seized by the officers.  This fact, however, does not render the evidence legally insufficient.  
See
 
Melton v. State
, No. 2052-02, 2003 WL 22346574, at *3-4 (Tex. Crim. App. Oct. 15, 2003) (following the plurality of 
Gabriel v. State
, 900 S.W.2d 721, 722 (Tex. Crim. App. 1995)(plurality op.)).
(footnote: 2)  

In
 Melton
, the court held the evidence was sufficient to convict the defendant of possession of more than four but less than two hundred grams of cocaine where a chemist/ toxicologist from the Texas Department of Public Safety conclusively tested an unspecified number of the thirty-five to forty rocks of a substance that weighted a total of 5.77 grams and appeared to be crack cocaine.  
Id
. at *1.  While he admitted that he did not test every rock, he testified, “The tan, solid substance that’s inside that tan plastic bag is crack cocaine.”  
Id
.  Likewise, the arresting officer, who was trained to recognize different types of narcotics, testified that the substance appeared to be crack cocaine, and his later field tested confirmed it was cocaine.  
Id. at
 *3.  Finally, the jury viewed the rocks of crack cocaine admitted into evidence, which the court held was most important.
 
 Id
. (citing 
Zimmerman v. State
, 754 S.W.2d 402, 405 (Tex. App.—Corpus Christi 1998, pet. ref’d) which held evidence to support jury’s deadly weapon finding where knife used by defendant was admitted into evidence for the jury to inspect, and examined as part of the record by the court of appeals).

Here, the jury heard evidence that (1) three random samples taken from substances found in the mailbox tested conclusively for containing cocaine using GCMS; (2) the aggregate weight of the cocaine in the mailbox was “[a] [l]ittle over six grams,” which is between four and two hundred grams; (3) the baggies each held a green and white rock-like substance, which appeared to be cocaine; (4) from Officer Aguilar’s training and experience as a narcotics officer, he recognized the baggies as a “common way” in which drugs are packaged for sale and distribution; and (5) the jury was allowed to inspect the rocks of crack cocaine admitted into evidence from a close visual distance
. Therefore, we  hold the evidence is factually sufficient to show that the weight of the cocaine in the mailbox was between four and two hundred grams.  We overrule appellant’s first point.

C. Presence of Adulterants and Dilutants 

In his third and fourth points, appellant argues that the evidence is factually insufficient because Brooks never identified any adulterants or dilutants in the controlled substances.  Under the statutory definition of “controlled substance” that was submitted to the jury, a controlled substance includes the “aggregate weight” of any substance containing a controlled substance, regardless of what percentage of the substance may be a prohibited drug. 
 See
 
Tex. Health & Safety Code Ann. 
§ 481.002(5) (Vernon Supp. 2004)
; 
Jackson v. 
State, 94 S.W.3d 46, 49 (Tex. App.—Tyler 2002, pet. ref’d.).  “Under the new Health and Safety Code definition, the State is no longer required to determine the amount of controlled substance 
and 
the amount of adulterant and dilutant that constitute the mixture . . . .  The State has to prove only that the aggregate weight of the controlled substance mixture, including adulterants and dilutants, equals the alleged minimum weight.”
 
 Melton
, 2003 WL 22346574 at *4 (citations omitted).
(footnote: 3) 
 Because it was not necessary for the State to show that substances contained adulterants and dilutants, we overrule appellant’s third and fourth points. 

Because the evidence described above shows that appellant delivered cocaine to Officer Smith, the controlled substances he delivered and possessed contained cocaine, and the aggregate weight of the substances fell within the penalty groups under which appellant was convicted, the evidence is factually sufficient to sustain the jury’s verdicts.

IV.  A
PPELLANT’S 
O
PINION OF OTHER 
W
ITNESSES’ 
V
ERACITY

In his fifth point, appellant complains the trial court erred by requiring him, over defense counsel’s objections, to answer the State’s repeated questions regarding whether, in his opinion, the officers who testified against him earlier in the trial were lying.  At trial, the following exchange occurred:

[THE STATE]:  Okay. Well, you heard [Officer Moore’s] testimony, and one of the two of you is lying, so is he lying?

[DEFENSE COUNSEL]:  Your Honor, I’m going to object to – counsel knows –

[THE COURT]:  Sustained as phrased.

[THE STATE]
:  Is Officer Moore lying about where he took you? 

[DEFENSE COUNSEL]:  Your Honor, I continue to object. 

[THE COURT]:  Overruled to that question.

[DEFENDANT]:  Yes. 

[PROSECUTOR]:  Is Officer Aguilar lying when he said he kept you in sight the entire time?

[DEFENSE COUNSEL]:  Your Honor, I’m going to object –

[DEFENDANT]:  I don’t know what –

[DEFENSE COUNSEL]:  I’m going to object based (sic) speculation. He does not know the mind-set of these officers or what someone else saw. 

[THE COURT]:  Sustained to the last question about what someone else saw. 

[PROSECUTOR]:  Is Officer Smith lying when he testified that you handed Adell cocaine who handed it back to him?

[DEFENSE COUNSEL]:  Your Honor, I’m going to object again as to him speculating as to whether Officer Smith lied or was mistaken or whatever is going on in Officer Smith’s mind.

[THE COURT]:  I’ll allow him to give his opinion.

[DEFENDANT]:  I don’t want to call the officer a liar, but I didn’t give nobody no dope. That’s all I can say, sir. 

[PROSECUTOR]:  So is he lying?

[DEFENDANT]:  I don’t know, sir. 

Appellant does not indicate which particular rulings he is challenging on appeal. 

To preserve a complaint for our review, a party must have presented to the trial court a
 
timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State,
 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).
  More specifically, to preserve a trial court’s ruling on evidence for our review, “an objecting party must pursue an objection to an adverse ruling.  If the objection is sustained, the objecting party must request an instruction to disregard.  If the instruction is given, the party must move for a mistrial.” 
 Turro v. State
, 950 S.W.2d 390, 405 (Tex. App.—Fort Worth 1997, pet. ref’d).  Finally, preservation of error is a systemic requirement that this court should review on its own motion. 
 Martinez v. State
, 22 S.W.3d 504, 507 n.7 (Tex. Crim. App. 2000); 
Hughes v. State
, 878 S.W.2d 142, 151 (Tex. Crim. App. 1992) (op. on reh’g), 
cert. denied
, 511 U.S. 1152 (1994).

In the present case, the trial court sustained appellant’s objection to the State’s first and third questions.
  Appellant did not, however, request a jury instruction or move for a mistrial following the court’s rulings.  Therefore, the trial court provided appellant all the relief he requested, and neither ruling is preserved for our review. 
See Turro
, 950 S.W.2d at 405
. 

The trial court also overruled appellant’s objection to the State’s second and fourth questions.  
See 
Tex. R. App. P. 33.1 
(a)(2) (stating a trial court’s ruling may be implied).  The appellant’s objection to the State’s second question failed to preserve error for our review because no grounds were cited, and the correct grounds were not obvious. 
 See
 
Tex. R. App. P.
 33.1(a)(1)(A);
 Bell v. State
, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 827 (1997); 
Lankston v. State
, 827 S.W.2d 907, 908 (Tex. Crim. App. 1992).
 Likewise, appellant’s objection to the State’s fourth question failed to preserve error for our review because it does not correspond with his complaint on appeal.  
See
 
Broxton v. State
, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).
 
However, we will consider
 appellant’s complaint regarding these overruled objections in the interest of justice. 

The law is clear that “[i]t is improper to require a witness to express his opinion as to the truth or falsity of testimony contradicting him.”  
Williams v. State
, 112 Tex. Crim. 307, 17 S.W.2d 56, 58 (1928); 
see Johnson v. State
, 614 S.W.2d 148, 154 n.17 (Tex. Crim. App. [Panel Op.] 1981); 
Raney v. State
, 958 S.W.2d 867, 879 (Tex. App.–Waco 1997, pet. denied).  Therefore, the trial court erred in overruling appellant’s objections.  

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment.  
See 
Tex. R. App. P.
 44.2.
  A trial court’s ruling on the admission of evidence is subject to harmless error analysis under rule 44.2(b). 
 See Solomon v. State
, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); 
see also Franks v. State
, 
90 S.W.3d 771, 805 (Tex. App.–Fort Worth 2002, no pet.).  Therefore, we are to disregard the error unless it affected appellant’s substantial rights. 
 See
 
Tex. R. App. P.
 44.2(b).  A substantial right is affected when the error had a substantial and injurious effect or influence on the jury’s verdict. 
 King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall v. State,
 961 S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet. ref’d.).  In making this determination, we review the record as a whole. 
 Kotteakos,
 328 U.S. at 764-65, 66 S. Ct. at 1248.

Here, on direct examination, appellant denied delivering cocaine to Adell as Officer Smith testified that he had.  This testimony, in light of 
Williams,
 establishes why appellant was not harmed:   
 

It is improper to require a witness to express his opinion as to the truth or falsity of testimony contradicting him.  However, the matter complained of does not warrant a reversal.  Appellant's testimony was directly contradictory of that of the state's witness.  If the jury had accepted appellant's version of the transaction as true they would necessarily have concluded that the state's witnesses had testified falsely.  In short, appellant's denial, coming from his own lips . . . was equivalent to a statement that the state's witnesses had testified falsely.  Hence it is not believed that the matter complained of could have been weighed by the jury in determining the credibility of the witnesses and the weight to be given to their testimony.  We are unable to perceive how appellant could have been injured in any manner by the question complained of.
 

Will
iams
, 17 S.W.2d at 58.  Additionally, appellant admitted that he had been convicted of both theft and burglary, had lied to the jury, and knew of no reason why the officers would testify falsely against him. 

We conclude that, in the context of the entire case against appellant, the trial court’s error in requiring appellant to testify as to his opinion of Officer Smith’s veracity did not have a substantial or injurious affect on the jury’s verdict and did not affect appellant’s substantial rights.  
See King
, 953 S.W.2d at 271.  Thus, we disregard the error.  
See 
Tex. R. App. P. 44.2(
b). 
 We overrule appellant’s fifth point of error. 

V.  C
ONCLUSION

Having overruled appellant’s points on appeal, we affirm the judgment of the trial court.

SAM J. DAY

JUSTICE

PANEL A: CAYCE, C.J.; GARDNER, J.; and SAM J. DAY, J. (Retired, Sitting by Assignment).

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED:  November 13, 2003

FOOTNOTES
1:
Brooks had to retest the substances because the forensic scientist who performed an earlier analysis had left the Fort Worth Police Department Crime Laboratory.

2: While the 
Melton 
court reviewed the evidence for legal sufficiency and we are reviewing the evidence in this case for factual sufficiency, the facts and the court’s reasoning are instructive. 

3: While the 
Melton 
court reviewed the evidence for legal sufficiency and we are reviewing the evidence in this case for factual sufficiency, the facts and the court’s reasoning are instructive.