COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 
2-02-404-CR
NO. 2-02-405-CR
 
APPELLANT
EDDIE ARTHUR CROSS, SR.
A/K/A EDDIE ARTHUR CROSS 
 
V.
 
THE STATE OF TEXAS                                                                  STATE 
 
------------
 
FROM THE 
372ND DISTRICT COURT OF TARRANT COUNTY 
 
------------
 
OPINION
 
------------
I. INTRODUCTION
        A jury found appellant Eddie Arthur Cross, Sr. guilty of delivery of a 
controlled substance in an amount less than one gram and possession with 
intent to deliver a controlled substance in an amount more than four grams but 
less than two hundred grams. In five points, appellant challenges the factual 
sufficiency of the evidence to support his convictions and claims the trial court 
erred in allowing the State to question him about the veracity of the State’s 
witness over objection. We affirm. 
II. FACTUAL AND PROCEDURAL BACKGROUND
        On March 4, 1998, Officer Andre L. Smith and five other officers of the 
Fort Worth Police Department’s Narcotics Division set up an undercover 
“buy/bust” sting operation. In preparation for the “buy/bust” operations, 
Officer Smith photocopied the cash that he would use in any undercover drug 
purchases, so the money could be identified if an arrest were made. Officer 
Smith went to the area around the intersection of Lancaster and Riverside in 
Fort Worth, Texas, around noon dressed in plain clothes and driving an 
unmarked car. The day was sunny and clear. 
        Upon approaching 2400 Cypress Street, Officer Smith observed a black 
male, who was later identified as Robert Adell, and signaled to him. After Adell 
approached, Officer Smith asked him for a “dime,” which is street slang for ten 
dollars worth of crack cocaine. Adell replied that he knew a place where he 
could take Officer Smith to make the purchase. Addell got into Smith’s car and 
directed him to the 1300 block of Bessie Street, near Al’s Rec Center and an 
apparent vacant house at 1311 Bessie Street. 
        Officer Smith testified that when he pulled up to the curb, he could see 
two or three individuals in front of the house. Adell asked Officer Smith for ten 
dollars, and Officer Smith handed him the money from the photocopied funds. 
Adell left the car and walked approximately fifteen feet to a second man, whom 
Officer Smith identified as appellant. Officer Smith testified that after speaking 
briefly with Adell, appellant took the ten dollar bill, turned, and walked by 
himself to the porch of the apparent vacant house, another five feet away. As 
he sat in the car by the curb, Officer Smith watched appellant reach into a 
mailbox, located near the door, with his right hand and pull out an object, which 
Officer Smith could not identify more clearly. Appellant walked back down to 
Adell, opened his right hand, and offered the object to him. Immediately after 
taking the object out of appellant’s hand, Adell walked directly back to Officer 
Smith’s car and got in. As they drove away, Adell opened his hand and 
presented Officer Smith with what appeared to be and what later testing 
established was a rock of crack cocaine in a yellow plastic baggie. 
        Officer Aaron Aguilar, Smith’s team member, had also monitored the 
undercover drug buy. Officer Aguilar testified that he positioned his vehicle 
near the 1300 block of Bessie Street and watched from a distance as Officer 
Smith pulled up to the curb on Bessie and Adell got out. He saw Addell 
approach a second man, whom he identified as appellant, and engage in “some 
type of hand-to-hand transaction” with him. Appellant then turned away and 
walked out of Aguilar’s line of sight, only to return moments later and again 
engage in “some type of hand-to-hand transaction” with Adell. Aguilar 
watched Adell reenter Officer Smith’s car and Officer Smith drive away. 
Officer Aguilar testified no other person who matched appellant’s description 
entered the area even after Officer Smith left the scene. 
        Officer Smith drove Adell back to where he had first picked him up and 
tipped him five dollars after Adell stated he “needed $5 for the hook up.” 
Officer Smith then notified the members of his team of the location and 
description of Adell and appellant. Officer Smith described appellant as a real 
tall black male with an Afro wearing a white cap, white T-shirt, gray pants, and 
white tennis shoes. Aguilar and two other officers approached the Bessie 
location and detained appellant, who, according to Aguilar, was the only person 
at the location that fit the description. The officers also recovered a ten dollar 
bill appellant clutched in his hand, which matched the serial number of one of 
the photocopied ten dollar bills. The team then took a Polaroid photograph of 
appellant, which they showed to Smith, who was waiting at a separate 
location. Officer Smith identified appellant as the man involved in the drug buy 
with Adell, and appellant was formally arrested. 
        Officer Smith provided Aguilar by radio with the address of the house and 
description of the mailbox from which appellant appeared to retrieve the drugs. 
Aguilar searched the mailbox and recovered a Ziploc bag that contained smaller 
baggies, each holding a green and white rock-like substance that appeared to 
be crack cocaine. Aguilar testified that from his training and experience as a 
narcotics officer, he recognized this sort of packaging as a “common way” in 
which drugs are packaged for sale and distribution. Members of the arrest team 
also arrested Adell and recovered the five dollar bill he received from Smith. No 
drugs were found on Adell. 
        At trial, John Brooks, a forensic scientist with the Fort Worth Police 
Department Crime Laboratory, testified that he examined and analyzed the 
substances obtained by the officers two days before trial. 
 

 Brooks performed 
a Scott’s presumptive chemical test for cocaine on the substance sold to
Officer Smith. After the presumptive test proved positive for the possible
presence of cocaine, Brooks conducted a gas chromatography mass
spectrometry test (“GCMS”), which conclusively proved that the substance,
which weighed 0.15 grams, contained cocaine.
        The contents of the Ziploc bag taken from the mailbox by Officer Aguilar 
had been separated into two bags, “Lab Item 2A” and “Lab Item 2B,” which 
each contained several smaller plastic baggies of the substance. Brooks 
performed six presumptive chemical tests on randomly selected substances in 
Lab Item 2A. After all six presumptive tests proved positive for the possible 
presence of cocaine, Brooks conducted a GCMS on three of the six samples 
that were presumptively tested, and those conclusively contained cocaine as 
well. The total weight of Lab Item 2A was 3.53 grams. Brooks also performed 
six presumptive chemical tests on randomly selected substances in Lab Item 
2B, which were all presumptive for the possible presence of cocaine. The total 
weight of Lab Item 2B was 2.57 grams, making a total of “[a] [l]ittle over” six 
grams of substance seized from the mailbox that contained cocaine. 
        Further, Brooks testified that he does not know what other materials 
made up the substance that contained cocaine because he did not attempt to 
identify them, but they could be adulterants, dilutants, or byproducts. Brooks 
also testified, however, that “in the [thirteen] conclusive tests that [he] 
performed on this particular narcotics case, that there were no adulterants or 
dilutants that were detected by [GCMS].” 
        Appellant testified that he was dressed exactly as Officer Smith described 
him while standing outside talking to some “fellows” in front of Al’s Rec Center 
and 1311 Bessie Street around noon on March 4, 1998. Appellant denied, 
however, possessing or delivering any drugs on the day in question. Appellant 
also maintained that he was given the ten dollar bill by Eddie Faulkwell, his 
friend and known drug dealer, shortly before Officer Aguilar approached him for 
the purpose of buying Faulkwell a six-pack of beer. 
        Following the jury’s finding of guilt on both counts, appellant was 
sentenced in accordance with the jury’s verdicts to twenty and fifty years’ 
confinement, the sentences to run concurrently. This appeal followed. 
III. FACTUAL SUFFICIENCY 
         In his first four points, appellant claims that the evidence is factually 
insufficient to support the verdict regarding: (1) appellant’s delivery of the 
controlled substance to Officer Smith through Adell; (2) the weight of the 
controlled substance found in the mailbox; and (3) the presence of adulterants 
or dilutants in the controlled substances found in the mailbox and those 
delivered to Officer Smith. 
        In reviewing the factual sufficiency of the evidence to support a 
conviction, we are to view all the evidence in a neutral light, favoring neither 
party. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. 
State, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996). Evidence is 
factually insufficient if it is so weak as to be clearly wrong and manifestly 
unjust or the adverse finding is against the great weight and preponderance of 
the available evidence. Johnson, 23 S.W.3d at 11. Therefore, we must 
determine whether a neutral review of all the evidence, both for and against the 
finding, demonstrates that the proof of guilt is so obviously weak as to 
undermine confidence in the verdict, or the proof of guilt, although adequate if 
taken alone, is greatly outweighed by contrary proof. Id. In performing this 
review, we are to give due deference to the fact finder’s determinations. Id. at 
8-9; Clewis, 922 S.W.2d at 136. We may not substitute our judgment for that 
of the fact finder’s. Johnson, 23 S.W.3d at 12. Consequently, we may find 
the evidence factually insufficient only where necessary to prevent manifest 
injustice. Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 
(Tex. Crim. App. 1997). 
        To make a determination of factual insufficiency, a complete and detailed 
examination of all the relevant evidence is required. Johnson, 23 S.W.3d at 
12. A proper factual sufficiency review must include a discussion of the most 
important and relevant evidence that supports the appellant’s complaint on 
appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 
A. Delivery
        In his second point, appellant argues that the evidence is factually 
insufficient to support the conviction for delivery of a controlled substance 
because Officer Smith testified that he could not positively identify the “item” 
he saw appellant give Adell. The evidence shows, however, that Officer Smith 
witnessed appellant leave Adell, go to the porch, reach into the mailbox with
his right hand, return to Adell, and offer Adell the object in his right hand. Adell
then proceeded directly to Officer Smith and gave him what he had taken from
appellant, which was cocaine. Moreover, when Adell was picked up, he
possessed no drugs; instead, cocaine, in similar packaging, was later found in
the mailbox. We hold the evidence is factually sufficient to show that appellant
delivered the controlled substance to Officer Smith. We overrule appellant’s
second point.
B. Weight
        In his first point, appellant argues that the evidence is factually 
insufficient to show he possessed more than four grams but less than two 
hundred grams of cocaine with intent to distribute. Specifically, appellant 
contends that the evidence is factually insufficient to support his conviction 
because Fort Worth Police Department forensic scientist John Brooks 
conclusively tested only three rocks of crack cocaine recovered from the 
mailbox and did not testify as to the total weight of the items conclusively 
tested.
        While Brooks specifically identified only three conclusive tests on the 
cocaine in the mailbox and one on the cocaine sold to Officer Smith, he also 
testified that he conducted “[thirteen] conclusive tests” in “this particular 
narcotics case.” In addition, Books conducted twelve presumptive tests that 
indicated the possible presence of cocaine in the substances found in the 
mailbox. Nevertheless, the number of conclusive tests conducted were less 
than the total number of rocks of cocaine seized by the officers. This fact, 
however, does not render the evidence legally insufficient. See Melton v. 
State, No. 2052-02, 2003 WL 22346574, at *3-4 (Tex. Crim. App. Oct. 15, 
2003) (following the plurality of Gabriel v. State, 900 S.W.2d 721, 722 (Tex. 
Crim. App. 1995)(plurality op.)). 
 

 
        In Melton, the court held the evidence was sufficient to convict the 
defendant of possession of more than four but less than two hundred grams of 
cocaine where a chemist/ toxicologist from the Texas Department of Public 
Safety conclusively tested an unspecified number of the thirty-five to forty 
rocks of a substance that weighted a total of 5.77 grams and appeared to be 
crack cocaine. Id. at *1. While he admitted that he did not test every rock, he 
testified, “The tan, solid substance that’s inside that tan plastic bag is crack 
cocaine.” Id. Likewise, the arresting officer, who was trained to recognize 
different types of narcotics, testified that the substance appeared to be crack 
cocaine, and his later field tested confirmed it was cocaine. Id. at *3. Finally, 
the jury viewed the rocks of crack cocaine admitted into evidence, which the 
court held was most important. Id. (citing Zimmerman v. State, 754 S.W.2d 
402, 405 (Tex. App.—Corpus Christi 1998, pet. ref’d) which held evidence to
support jury’s deadly weapon finding where knife used by defendant was
admitted into evidence for the jury to inspect, and examined as part of the
record by the court of appeals).
        Here, the jury heard evidence that (1) three random samples taken from 
substances found in the mailbox tested conclusively for containing cocaine 
using GCMS; (2) the aggregate weight of the cocaine in the mailbox was “[a] 
[l]ittle over six grams,” which is between four and two hundred grams; (3) the 
baggies each held a green and white rock-like substance, which appeared to be 
cocaine; (4) from Officer Aguilar’s training and experience as a narcotics officer, 
he recognized the baggies as a “common way” in which drugs are packaged for 
sale and distribution; and (5) the jury was allowed to inspect the rocks of crack 
cocaine admitted into evidence from a close visual distance. Therefore, we 
hold the evidence is factually sufficient to show that the weight of the cocaine
in the mailbox was between four and two hundred grams. We overrule
appellant’s first point.
C. Presence of Adulterants and Dilutants 
        In his third and fourth points, appellant argues that the evidence is 
factually insufficient because Brooks never identified any adulterants or 
dilutants in the controlled substances. Under the statutory definition of 
“controlled substance” that was submitted to the jury, a controlled substance 
includes the “aggregate weight” of any substance containing a controlled 
substance, regardless of what percentage of the substance may be a prohibited 
drug. See Tex. Health & Safety Code Ann. § 481.002(5) (Vernon Supp. 2004); 
Jackson v. State, 94 S.W.3d 46, 49 (Tex. App.—Tyler 2002, pet. ref’d.). 
“Under the new Health and Safety Code definition, the State is no longer
required to determine the amount of controlled substance and the amount of
adulterant and dilutant that constitute the mixture . . . . The State has to prove
only that the aggregate weight of the controlled substance mixture, including
adulterants and dilutants, equals the alleged minimum weight.” Melton, 2003
WL 22346574 at *4 (citations omitted).
 

 Because it was not necessary for the 
State to show that substances contained adulterants and dilutants, we overrule
appellant’s third and fourth points. 
        Because the evidence described above shows that appellant delivered 
cocaine to Officer Smith, the controlled substances he delivered and possessed 
contained cocaine, and the aggregate weight of the substances fell within the 
penalty groups under which appellant was convicted, the evidence is factually 
sufficient to sustain the jury’s verdicts. 
IV. APPELLANT’S OPINION OF OTHER WITNESSES’ VERACITY
        In his fifth point, appellant complains the trial court erred by requiring him, 
over defense counsel’s objections, to answer the State’s repeated questions 
regarding whether, in his opinion, the officers who testified against him earlier 
in the trial were lying. At trial, the following exchange occurred: 
 
[THE STATE]: Okay. Well, you heard [Officer Moore’s] 
testimony, and one of the two of you is lying, so is he lying? 
 
[DEFENSE COUNSEL]: Your Honor, I’m going to object to – 
counsel knows – 
 
[THE COURT]: Sustained as phrased. 
 
[THE STATE]: Is Officer Moore lying about where he took 
you? 
 
                [DEFENSE COUNSEL]: Your Honor, I continue to object. 
 
                [THE COURT]: Overruled to that question. 
 
                [DEFENDANT]: Yes.  
 
[PROSECUTOR]: Is Officer Aguilar lying when he said he 
kept you in sight the entire time? 
 
                [DEFENSE COUNSEL]: Your Honor, I’m going to object – 
 
                [DEFENDANT]: I don’t know what – 
 
[DEFENSE COUNSEL]: I’m going to object based (sic) 
speculation. He does not know the mind-set of these officers or 
what someone else saw. 
 
[THE COURT]: Sustained to the last question about what 
someone else saw. 
 
[PROSECUTOR]: Is Officer Smith lying when he testified that 
you handed Adell cocaine who handed it back to him? 
 
[DEFENSE COUNSEL]: Your Honor, I’m going to object again 
as to him speculating as to whether Officer Smith lied or was 
mistaken or whatever is going on in Officer Smith’s mind. 
 
[THE COURT]: I’ll allow him to give his opinion. 
 
[DEFENDANT]: I don’t want to call the officer a liar, but I 
didn’t give nobody no dope. That’s all I can say, sir. 
 
                [PROSECUTOR]: So is he lying? 
 
                [DEFENDANT]: I don’t know, sir. 

Appellant does not indicate which particular rulings he is challenging on appeal. 
        To preserve a complaint for our review, a party must have presented to 
the trial court a timely request, objection, or motion that states the specific 
grounds for the desired ruling if they are not apparent from the context of the 
request, objection, or motion. Tex. R. App. P. 33.1(a)(1); Mosley v. State, 983 
S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), cert. denied, 526 U.S. 
1070 (1999). More specifically, to preserve a trial court’s ruling on evidence 
for our review, “an objecting party must pursue an objection to an adverse
ruling. If the objection is sustained, the objecting party must request an
instruction to disregard. If the instruction is given, the party must move for a
mistrial.” Turro v. State, 950 S.W.2d 390, 405 (Tex. App.—Fort Worth 1997,
pet. ref’d). Finally, preservation of error is a systemic requirement that this
court should review on its own motion. Martinez v. State, 22 S.W.3d 504,
507 n.7 (Tex. Crim. App. 2000); Hughes v. State, 878 S.W.2d 142, 151 (Tex.
Crim. App. 1992) (op. on reh’g), cert. denied, 511 U.S. 1152 (1994).
        In the present case, the trial court sustained appellant’s objection to the 
State’s first and third questions. Appellant did not, however, request a jury 
instruction or move for a mistrial following the court’s rulings. Therefore, the
trial court provided appellant all the relief he requested, and neither ruling is
preserved for our review. See Turro, 950 S.W.2d at 405. 
        The trial court also overruled appellant’s objection to the State’s second 
and fourth questions. See Tex. R. App. P. 33.1 (a)(2) (stating a trial court’s 
ruling may be implied). The appellant’s objection to the State’s second question 
failed to preserve error for our review because no grounds were cited, and the 
correct grounds were not obvious. See Tex. R. App. P. 33.1(a)(1)(A); Bell v. 
State, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 827
(1997); Lankston v. State, 827 S.W.2d 907, 908 (Tex. Crim. App. 1992).
Likewise, appellant’s objection to the State’s fourth question failed to preserve
error for our review because it does not correspond with his complaint on
appeal. See Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).
However, we will consider appellant’s complaint regarding these overruled
objections in the interest of justice. 
        The law is clear that “[i]t is improper to require a witness to express his 
opinion as to the truth or falsity of testimony contradicting him.” Williams v. 
State, 112 Tex. Crim. 307, 17 S.W.2d 56, 58 (1928); see Johnson v. State, 
614 S.W.2d 148, 154 n.17 (Tex. Crim. App. [Panel Op.] 1981); Raney v. 
State, 958 S.W.2d 867, 879 (Tex. App.–Waco 1997, pet. denied). Therefore, 
the trial court erred in overruling appellant’s objections. 
        Having found error, we must conduct a harm analysis to determine 
whether the error calls for reversal of the judgment. See Tex. R. App. P. 44.2. 
A trial court’s ruling on the admission of evidence is subject to harmless error
analysis under rule 44.2(b). See Solomon v. State, 49 S.W.3d 356, 365 (Tex.
Crim. App. 2001); see also Franks v. State, 90 S.W.3d 771, 805 (Tex.
App.–Fort Worth 2002, no pet.). Therefore, we are to disregard the error
unless it affected appellant’s substantial rights. See Tex. R. App. P. 44.2(b). 
A substantial right is affected when the error had a substantial and injurious
effect or influence on the jury’s verdict. King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997) (citing Kotteakos v. United States, 328 U.S. 750, 776,
66 S. Ct. 1239, 1253 (1946)); Coggeshall v. State, 961 S.W.2d 639, 643
(Tex. App.—Fort Worth 1998, pet. ref’d.). In making this determination, we
review the record as a whole. Kotteakos, 328 U.S. at 764-65, 66 S. Ct. at
1248.
        Here, on direct examination, appellant denied delivering cocaine to Adell 
as Officer Smith testified that he had. This testimony, in light of Williams, 
establishes why appellant was not harmed: 
It is improper to require a witness to express his
opinion as to the truth or falsity of testimony
contradicting him. However, the matter complained of
does not warrant a reversal. Appellant's testimony
was directly contradictory of that of the state's
witness. If the jury had accepted appellant's version
of the transaction as true they would necessarily have
concluded that the state's witnesses had testified
falsely. In short, appellant's denial, coming from his
own lips . . . was equivalent to a statement that the
state's witnesses had testified falsely. Hence it is not
believed that the matter complained of could have been
weighed by the jury in determining the credibility of the
witnesses and the weight to be given to their
testimony. We are unable to perceive how appellant
could have been injured in any manner by the question
complained of. 
 
Williams, 17 S.W.2d at 58. Additionally, appellant admitted that he had been
convicted of both theft and burglary, had lied to the jury, and knew of no
reason why the officers would testify falsely against him. 
        We conclude that, in the context of the entire case against appellant, the 
trial court’s error in requiring appellant to testify as to his opinion of Officer 
Smith’s veracity did not have a substantial or injurious affect on the jury’s 
verdict and did not affect appellant’s substantial rights. See King, 953 S.W.2d 
at 271. Thus, we disregard the error. See Tex. R. App. P. 44.2(b). We overrule 
appellant’s fifth point of error. 
V. CONCLUSION 
Having overruled appellant’s points on appeal, we affirm the judgment of
the trial court.
 
                                                          SAM J. DAY 
                                                          JUSTICE
 
PANEL A:   CAYCE, C.J.; GARDNER, J.; and SAM J. DAY, J. (Retired, Sitting
by Assignment).
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: November 13, 2003