IN THE COURT OF CRIMINAL APPEALS


OF TEXAS





NO. 2052-02






HARLAN GENE MELTON, JR., Appellant



v.



THE STATE OF TEXAS






ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


TRAVIS COUNTY






 Hervey, J., delivered the opinion of the Court in which Meyers, Price, Womack,
Johnson, Keasler, Holcomb and Cochran, JJ., joined. Keller, PJ., concurred.


O P I N I O N 


 We must determine whether the State has to test each and every rock of suspected crack cocaine
in order for the evidence to be legally sufficient to support a conviction for possession of the alleged
amount. Further, we must decide under what circumstances testing a random sample of a larger quantity
will be legally sufficient to support such a conviction.

 The court of appeals concluded it would not be unreasonable for the State to test an amount within
the punishment range it sought to impose. Melton v. State, 85 S.W.3d 442, 444-45 (Tex. App.--Austin
2003). Having failed to prove that the plastic bag found in the appellant's possession contained only crack
cocaine, the court held that the evidence was legally insufficient to support appellant's conviction of
possession of four or more but less than 200 grams of cocaine. Id. at 445; see Tex. Health & Safety
Code Ann. § 481.115 (d) (Vernon 2002). Because testing confirmed an indefinite amount of cocaine,
however, the court rendered a judgment on the lesser-charged offense of possession of less than a gram
of cocaine. Melton, 85 S.W.3d at 445; see Tex. Health & Safety Code Ann. § 481.115 (b) (Vernon
2002). We find that the court of appeals erred in so holding and, therefore, reverse the court of appeals'
judgment and affirm the trial court's decision.

 In the early hours of August 14, 2000, Travis County Sheriff's Deputy Michael Mancias responded
to a disturbance at the Golden Nugget Motel in the southeast part of Travis county. Upon arrival, Mancias
found appellant running around on the motel rooftop holding an antenna. Mancias repeatedly asked
appellant to come down from the rooftop. When he finally complied, Mancias immediately placed him in
handcuffs. Mancias testified that appellant was combative, saying that someone was trying to shoot him
and that there were lasers on him. Appellant also was sweating profusely and kicking around on the
ground. Based on these observations, Mancias believed that appellant was under the influence of some
narcotic and placed him under arrest for public intoxication. As appellant continued to "flop around" on
the ground, Mancias proceeded to search him. While appellant was on his back, Mancias noticed a small
plastic bag sticking out from the crotch of appellant's shorts. Mancias retrieved the bag and discovered
that it contained approximately thirty-five to forty rocks of a substance that appeared to be crack cocaine. 
Mancias used a digital scale to measure the substance as weighing 6.4 grams. (1) He also conducted a field
test using an ampule containing a solution that, when mixed with cocaine, would turn blue, indicating a
positive reaction for cocaine. The field test was positive. (2) Appellant was eventually taken to Brackenridge
Hospital in Austin by EMS where he was treated for a drug overdose.

 At appellant's trial, Dennis Ramsey, a chemist/toxicologist for the Texas Department of Public
Safety, testified, "The tan, solid substance that's inside that tan plastic bag is crack cocaine." He first
determined the net weight of the substance was 5.77 grams. (3) Ramsey then tested an unspecified number
of rocks using an ultraviolet spectrophotometer and a gas chromatography mass spectrometer, confirming
that each contained cocaine. (4) He admitted, however, that he did not test every rock. The jury convicted
appellant of possession of more than four but less than 200 grams of cocaine. (5)

 Appellant argued on direct appeal that the testing of only a representative component from a group
of items suspected to contain cocaine is not evidence of the composition of all the items absent proof that
the tested items are truly representative. Melton, 85 S.W.3d at 444. The court of appeals agreed. 
Relying on one of its earlier decisions, the court suggested that it is not unreasonable for the State "to test
and prove that the substance possessed is a controlled substance in an amount within the range of
punishment it is seeking to impose." Id. at 444-45; see Thorpe v. State, 831 S.W.2d 548 (Tex.
App.--Austin 1992, no pet.). Although Deputy Mancias and Chemist Ramsey testified that the bag
appeared to contain crack cocaine, the court concluded that the evidence was legally insufficient "to prove
that items in the baggie included four grams of crack cocaine." Melton, 85 S.W.3d at 445. The court
explained that neither Mancias nor Ramsey testified that the untested substance was "virtually identical" to
that tested. Id. Furthermore, the court hypothesized that some of the thirty-five to forty items in the bag
may not have contained any cocaine, stating that "if a rock is composed entirely of noncocaine, then the
noncocaine substances are not adulterants or dilutants . . . and their weight cannot be added to the
aggregate weight of the cocaine." Id. While the court focused much of its decision on Thorpe, the court
also cited to the plurality and concurring opinions of this Court in Gabriel v. State, 900 S.W.2d 721 (Tex.
Crim. App. 1995). Melton, 85 S.W.3d at 445.

 Like appellant in this case, the appellant in Gabriel argued that the evidence was legally insufficient
to prove the alleged amount of cocaine because "the State was required to test enough substance to meet
the alleged weight amount." Gabriel, 900 S.W.2d at 721. But unlike this case, where all the rocks were
found in one plastic bag, in Gabriel the State seized fifty-four individual plastic bags, each allegedly
containing only two or three rocks of crack cocaine. Id. at 721-22. The chemist for the State tested the
rocks in five of the fifty-four bags using tests similar to those used in this case. Id. at 722. As for the
remaining bags, she visually inspected them, finding their contents to be "virtually identical to the ones she
tested." Id. Presiding Judge McCormick, writing the plurality opinion joined by three other members of
this Court, held, that "[i]t was rational for the factfinder to conclude that identically packaged substances,
which appear to be the same substance, are in fact the same substance." Id. That opinion continued, "The
manner of testing the substances by random sampling goes only to the weight the jury may give to the tested
substances in determining the untested substance is the same as the tested substance." Id. 

 Although he agreed with the plurality's decision affirming the court of appeals, Judge Clinton, joined
by two other judges, (6) issued a concurring opinion as he was "far less certain than the plurality that a rational
jury could find beyond a reasonable doubt that various substances are the same simply because they
'appear to be' so, and are 'identically packaged.'" Gabriel, 900 S.W.2d at 722 (Clinton, J., concurring). (7) 
Instead, Judge Clinton relied on additional factors to substantiate the inference that the substance in the
untested bags was cocaine, including that "the substances in all of the baggies were of like texture and
appearance, even if [the evidence] does not specifically reveal just how distinctive and exclusive to 'rock'
cocaine that texture and appearance may be"; that the baggies were all seized from a "classic 'crack
house'" at the same time; and, that three of the bags were conclusively proven to contain cocaine. Id. at
727.

 When reviewing the legal sufficiency of the evidence, we consider the entire record in the light most
favorable to the verdict and determine whether a rational trier of fact could have found each of the elements
of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781,
61 L. Ed. 2d 560 (1979). The trier of fact, in this case, the jury, maintains the power to draw reasonable
inferences from basic facts to ultimate facts. Hernandez v. State, 939 S.W.2d 692, 693 (Tex.
App.--Fort Worth 1997, pet. ref'd) (citing Jackson, 443 U.S. at 319). Although Gabriel is a plurality
opinion, and therefore nonbinding, we nonetheless find it persuasive. See State v. Hardy, 963 S.W.2d
516, 519 (Tex. Crim. App. 1997) ("[W]e may look to those opinions for their persuasive value.").

 In Gabriel, the officers found the rocks of crack cocaine at issue in separate containers. Here, the
officer found all the rocks of suspected crack cocaine in a single plastic bag, thus fortifying the inference
that all the rocks, like the ones tested, contained cocaine. See Gabriel, 900 S.W.2d at 725 (Clinton, J.,
concurring) ("It has been held that random sampling of an apparently homogenous substance wholly
contained within a single receptacle is sufficient to prove the whole is contraband."). Furthermore,
Ramsey testified about the process used to make crack cocaine. He testified that crack cocaine is made
by mixing powder cocaine (cocaine hydrochloride) with any basic solution and heating the mixture. 
According to Ramsey, the crack cocaine precipitates out of the mixture and falls to the bottom. The liquid
is then poured off and the residue is left to dry into a "cookie." The cookie is then cut into the individual
rocks.

 The court of appeals appeared to distinguish this case from Gabriel because there was no
testimony here that the untested substance was "virtually identical." Although such exact wording was
never used, Deputy Mancias, who received training relating to recognizing different types of narcotics,
testified that when he found the bag, it contained thirty-five to forty rocks "of a substance that appeared
to be rock cocaine that I later field tested as cocaine." Additionally, when asked if he recognized the
substance in the bag, Ramsey responded, "The tan, solid substance that's inside that tan plastic bag is crack
cocaine." See Henson v. State, 915 S.W.2d 186, 192 (Tex. App.--Corpus Christi 1996, no pet.)
("Expert witness testimony regarding the nature of controlled substances based upon visual observation is
proper evidence.").

 Finally, and most importantly, the jury viewed the rocks of crack cocaine admitted into evidence. 
Based on their inspections, the jury could have reasonably concluded that the substance was apparently
homogenous. See Zimmerman v. State, 754 S.W.2d 402, 405 (Tex. App.--Corpus Christi 1988, pet.
ref'd) (holding evidence sufficient to support jury's deadly weapon finding where knife used by defendant
was admitted into evidence for the jury to inspect, and examined as part of the record by the court of
appeals); Means v. State, 372 S.E.2d 484, 486 (Ga. Ct. App. 1988) ("[T]he factfinder was able to make
its own determination of the uniformity of the pieces of contraband since the contents of the 121 baggies
were entered into evidence . . . ."). 

 As pointed out earlier, the court of appeals implied that some of the rocks may not have contained
any cocaine and, therefore, "if a rock is composed entirely of noncocaine, then the noncocaine substances
are not adulterants or dilutants because they are not adulterating or diluting cocaine, and their weight cannot
be added to the aggregate weight of cocaine." Melton, 85 S.W.3d at 445. An adulterant or dilutant is
"any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the
chemical activity of the controlled substance." Tex. Health & Safety Code Ann. § 481.002 (49)
(emphasis added). By the plain language of this definition, any material found in a rock of crack cocaine
that is not cocaine is an adulterant or dilutant as long as it "increases the bulk or quantity" of the controlled
substance, cocaine. See id.

 The fault in the court's point is that it treats each rock as a separate controlled substance, rather
than treat all the rocks as a mixture. The term "controlled substance" includes the "aggregate weight of any
mixture, solution, or other substance containing a controlled substance." Tex. Health & Safety Code
Ann. § 481.002 (5) (Vernon 2003) (emphasis added). Here, the jury heard testimony that the rocks of
crack cocaine were all found in one bag. The jury was also permitted to inspect the bag and its contents
in order to see the similarities in appearance. Therefore, it was reasonable for the jury to infer that the
thirty-five to forty rocks composed a mixture of crack cocaine, even if, some of the rocks were, as the
court of appeals hypothesized, "composed entirely of noncocaine." (8) Under these circumstances, it would
be unnecessary to require the State to test each rock to determine whether it contains cocaine, much in the
same way that it would be unnecessary to require the State to prove that each grain of a powdery
substance contains cocaine, especially if there were, hypothetically, 350 to 400 rocks instead of thirty-five
to forty, all with the same appearance, and all found in the same receptacle. The Legislature did away with
the requirement for this sort of hyper-technical analysis when it amended the definition of "adulterant or
dilutant." See Tex. Health & Safety Code Ann. § 481.002 (49) (Vernon 2003); Hines v. State, 976
S.W.2d 912, 913 (Tex. App.--Beaumont 1998, no pet.).

 Under the new Health and Safety Code definition, the State is no longer required to determine the
amount of controlled substance and the amount of adulterant and dilutant that constitute the mixture. See
Isassi v. State, 91 S.W.3d 807, 810 (Tex. App.--El Paso 2002, pet. ref'd); Williams v. State, 936
S.W.2d 399, 405 (Tex. App.--Ft. Worth 1996, pet. ref'd); Tex. Health & Safety Code Ann. §
481.115. The State has to prove only that the aggregate weight of the controlled substance mixture,
including adulterants and dilutants, equals the alleged minimum weight. See Isassi, 91 S.W.3d at 810;
Hines, 976 S.W.2d at 913; Tex. Health & Safety Code Ann. § 481.002 (5) (Vernon 2003). Here,
Ramsey tested and confirmed that the rocks contained cocaine, and that the aggregate weight of the rocks
was 5.77 grams. Contrary to the finding of the court of appeals, we find that a rational jury could have
found that the evidence showed beyond a reasonable doubt that the plastic bag found in the appellant's
possession contained at a minimum, four grams of cocaine. The State's ground for review is sustained.

 The court of appeals' judgment is reversed and the judgment of the trial court is affirmed.

 Hervey, J.

Delivered: October 15, 2003

Publish
1. The record is not clear whether this 6.4 grams was the cumulative weight of the bag and its
contents or the contents only.
2. 

 The record is also not clear about how much of the substance Mancias field tested.
3. 

 Here, the record is clear that Ramsey measured the weight of the substance only. He testified that
he measured the bag and its contents, emptied the contents, weighed the bag only, and then used
those measurements to calculate the net weight of the contents. Ramsey also explained that the
difference in weights from his test and the field test conducted by Mancias could be due to several
factors including that Mancias weighed it in the plastic, that the crack dries out over time losing
weight, and that Mancias' scale may not have been exactly accurate.
4. 

 In addition to there being no testimony regarding the number of rocks tested, there was no
testimony about the total weight of the substance tested.
5. 

 The jury charge provided for possible convictions under three levels of possession: less than
one gram, one or more but less than four grams, or four or more but less than 200 grams. See
Tex. Health & Safety Code Ann. §§ 481.115 (b) - (d).
6. 

 Judge Maloney only joined Judge Clinton's concurring opinion only in parts one and two. Part
three of Judge Clinton's opinion deals with the issue of shifting the burden to the defendant to test
the remaining untested bags. See Gabriel, 900 S.W.3d at 727-28 (Clinton, J., concurring). 
7. 

 In looking at cases involving random sampling from other jurisdictions, Judge Clinton pointed out,
"It has been held that random sampling of an apparently homogeneous substance wholly contained
within a single receptacle is sufficient to prove that the whole is contraband." Id. at 725 (citing
People v. Ohley, 303 N.E.2d 761 (Ill. App. Ct. 1973); People v. Yosell, 368 N.E.2d 735 (Ill.
App. Ct. 1977); People v. Kaludis, 497 N.E.2d 360 (Ill. App. Ct. 1986)). More pertinent to
the facts of this case, he noted, "[T]he courts that have addressed the specific question have held
that only a random sample of crack cocaine need be tested to establish the requisite amount,
whether found in one receptacle or in individual packets." Id. (citing Bond v. State, 538 So.2d
499 (Fla. Dist. Ct. App. 1989); State v. Meeks, 552 So.2d 328 (Fla. Dist. Ct. App. 1990); State
v. Ballom, 562 So.2d 1073 (La. Ct. App. 1990); In re Lemons, 603 N.E.2d 315 (Ohio Ct. App.
1991); State v. Gibson, 856 S.W.2d 78 (Mo. Ct. App. 1993)). Although he declined to adopt
this interpretation, Judge Clinton concluded, "It appears from these cases that by and large it is
sufficient to extrapolate from a random sample of an apparently homogeneous substance found in
a single receptacle that the whole of the substance is the same." Id. at 726.
8. 

 On the contrary, such an inference by the jury would obviously be unreasonable if the bag
contained, for instance, one rock of crack cocaine and thirty-four kernels of popcorn.