In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00037-CR
______________________________


JENNIFER LYNN JACKSON,
A/K/A JENNIFER LYNN WALKER, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 13,537


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Evidence was presented to a jury that the search of the vehicle driven by Jennifer Lynn
Jackson, a/k/a Jennifer Lynn Walker, revealed it contained more than 1,400 grams of
methamphetamine including adulterants and dilutants. The jury found Jackson guilty of the offense
of possession of over 400 grams of methamphetamine with intent to deliver and assessed her
punishment at twenty-five years' imprisonment. Jackson argues on appeal that the evidence is legally
and factually insufficient to support the verdict and that the court erred by failing to submit a charge
on a lesser offense of possession of less than 400 grams with intent to deliver. We find no error and
affirm.
1.         Factual Background
            The evidence shows that Ryan Walker (Jackson's brother) called the 9-1-1 emergency number
from a pay telephone at a store in Rosewood to complain that Jackson's boyfriend, Jason Hixon, had
assaulted him several times at Ryan's home. Upshur County deputies Jeffrey Moore, Gabe Downs,
and Mark Duaster responded and took Ryan to his home, where they found that Hixon and Jackson
had taken Ryan's mother's pickup truck and driven away. The officers also determined that Hixon
was wanted for violation of community supervision. 
            Deputy Downs found the vehicle about an hour later at the Rosewood store. When Deputy
Moore arrived, he saw a male crouching by the passenger side of the truck out of Downs' line of
sight. The person ran away; Moore drove his vehicle behind the store while Downs attempted to
intercept the fleeing man. Immediately afterward, Jackson drove away in the truck, and Moore
began to follow. While being chased, Jackson threw a black bag out of the window. She stopped
the truck, and Moore removed her from it and placed her in a patrol car. Moore then retrieved the
black bag Jackson had thrown from the car. The bag contained compact discs, some of which were
labeled "Jennifer" and "Jennifer and Jason." The handbag also contained plastic tubing, razor blades,
a hypodermic syringe, plastic baggies, and a butane fuel container. When the truck was searched,
officers found another black purse and a black gym bag in the cab. A tub containing chemicals and
paraphernalia associated with homemade methamphetamine was in the truck bed. The black purse
found inside the truck contained Jackson's identification cards, receipts for Sudafed, razor blades,
heat antifreeze, iodine, peroxide, and acetone. The gym bag contained bottles with a clear liquid,
plastic baggies, and razor blades. After discovering the tub in the truck bed with containers labeled
acetone, Moore concluded he had seized a mobile methamphetamine "lab" and, ultimately, the Texas
Department of Public Safety (DPS) laboratory personnel was contacted to further investigate. 
            A DPS expert testified about how the items could be used to make methamphetamine and
testified that the laboratory analysis of recovered liquids was that there were over 1,400 grams of
methamphetamine, adulterants, and dilutants in the various liquids. 
2.         Sufficiency of the Evidence
            a.         Standard of Review 
            In reviewing the evidence for legal sufficiency, we employ the standards set forth in Jackson
v. Virginia, 443 U.S. 307, 319 (1979), which calls for us to view the relevant evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). In our review of the evidence for factual sufficiency, we view all the evidence
in a neutral light and determine whether the evidence supporting the verdict is too weak to support
the finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong enough
that the beyond-a-reasonable-doubt standard could not have been met. Threadgill v. State, 146
S.W.3d 654, 664 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477, 486 (Tex. Crim.
App. 2004)).
            b.        Analysis
            Jackson contends there is neither legally nor factually sufficient evidence to sustain a
conviction for possession with intent to deliver. The argument is largely based on her testimony
admitting that she had thrown the bag out because it contained drug paraphernalia, but that she had
no knowledge of the contents of the other two bags, or that the tub was in the truck bed. She testified
Jason must have put the tub and its contents into the truck bed while she was not in the area. 
            When an accused is not in exclusive possession of the place where contraband is found, it
cannot be concluded that the person had knowledge or control over the contraband unless there are
additional independent facts and circumstances which affirmatively link the accused to the
contraband. Brown v. State, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995). However, the
"affirmative link" must establish, to the requisite level of confidence, that the accused's connection
with the drug was more than just fortuitous. Id. at 747.
            Factors recognized by the caselaw that are to be considered when evaluating affirmative links
include: (1) the defendant's presence when the search was executed; (2) whether the contraband was
in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether
the defendant was under the influence of a controlled substance when arrested; (5) whether the
defendant possessed other contraband when arrested; (6) whether the defendant made incriminating
statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant
made furtive gestures; (9) whether there was an odor of the contraband; (10) whether other
contraband or drug paraphernalia was present; (11) whether the defendant owned or had the right
to possess the place where the drugs were found; (12) whether the place the drugs were found was
enclosed; (13) whether there was a significant amount of drugs; and (14) whether the defendant
possessed weapons or large amounts of cash. Stubblefield v. State, 79 S.W.3d 171, 174 (Tex.
App.—Texarkana 2002, pet. ref'd); Jones v. State, 963 S.W.2d 826, 830 (Tex. App.—Texarkana
1998, pet. ref'd); De La Garza v. State, 898 S.W.2d 376, 379 (Tex. App.—San Antonio 1995, no
pet.). The number of affirmative links present is not as important as the degree to which they tend
to link the defendant to the controlled substance. Taylor v. State, 106 S.W.3d 827, 831 (Tex.
App.—Dallas 2003, no pet.); Williams v. State, 906 S.W.2d 58, 65 (Tex. App.—Tyler 1995, pet.
ref'd); Whitworth v. State, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd). 
            Jackson argues the evidence is insufficient to prove that she possessed the methamphetamine
with intent to deliver. Intent to deliver may be shown by circumstantial evidence, including evidence
surrounding its possession. Bryant v. State, 997 S.W.2d 673, 675 (Tex. App.—Texarkana 1999, no
pet.). Intent to deliver may be inferred from (1) the nature of the location where the defendant was
arrested, (2) the quantity of the controlled substance possessed by the defendant, (3) the manner of
packaging, (4) the presence of drug paraphernalia, (5) the defendant's possession of a large amount
of cash, and (6) the defendant's status as a drug user. Guy v. State, 160 S.W.3d 606, 614 (Tex.
App.—Fort Worth 2005, pet. ref'd); Bryant, 997 S.W.2d at 675.
            In this case, part of the contraband was in the cab of the truck with Jackson. A large number
of items of drug paraphernalia was found in the bag Jackson threw from the truck, which also
contained her personal property. The black purse in the truck, where Jackson's identification cards
were found, contained items used in drug manufacturing and delivery. Several bottles of liquid that
an expert identified as containing more than 900 grams of methamphetamine were found in a gym
bag inside the truck. The other contraband was in the bed of the truck. The bags were obviously
visible, and there was no indication that the tub with the manufacturing items was hidden. The
expert identified the quantity of the contraband as over 1,400 grams of methamphetamine, together
with adulterants and dilutants. Officers testified that these items constituted a mobile
methamphetamine "lab." Further, it would be reasonable for a jury to conclude that Jackson had
been involved in the purchase of a number of these items of drug paraphernalia and ingredients for
producing methamphetamine, since she had the receipts in her purse. She was in close proximity,
a large amount of drugs and paraphernalia was found, both she and Hixon attempted to elude police,
and the truck that she was driving belonged to Jackson's mother—thus, she had at the least more of
a possible right to possession of the vehicle than did her boyfriend. 
            This evidence is legally sufficient to allow the jury to conclude Jackson possessed the
contraband with the intent to deliver. Further, even though we recognize that, in her version of
events, she had no knowledge of the items in the bed of the truck, the jury was entitled to look at all
of the surrounding circumstances, including the fact that the items were both in the cab and bed of
the truck, or simply to disbelieve her testimony. We find Jackson's evidence that is contrary to the
verdict is not so strong that the State could not meet its standard of proof. Therefore, the evidence
is also factually sufficient to support the verdict. The contentions of error are overruled.
3.         Lesser Offense Requested Charge
            Jackson next contends the trial court erred by refusing to submit a charge to the jury on a
lesser-included offense: possession of less than 400 grams of a controlled substance. The argument
is based on the DPS criminalist's testimony. The criminalist, Ruben Rendon, testified the liquids
recovered that tested positive for methamphetamine totaled far above the requisite 400-gram
minimum. Jackson contends that, because he could not testify as to the dry powder weight of pure
methamphetamine that could have been extracted from the liquid suspension, the evidence is
insufficient to prove the amount, and, thus, the jury should have been charged on the lesser-included
offense of possession of less than 400 grams.
            The State is no longer required to determine the amount of the controlled substance and the
amount of adulterants and dilutants that constitute the mixture. See Melton v. State, 120 S.W.3d 339,
344 (Tex. Crim. App. 2003); Isassi v. State, 91 S.W.3d 807, 810 (Tex. App.—El Paso 2002, pet.
ref'd). The State has to prove only that the aggregate weight of the controlled substance mixture,
including adulterants and dilutants, equals the alleged minimum weight. See Tex. Health &
Safety Code Ann. § 481.002(5), (49) (Vernon Supp. 2005); Melton, 120 S.W.3d at 344. 
            A defendant is entitled to a charge on a lesser offense if (1) the lesser offense is included
within the proof necessary to establish the offense charged, and (2) there is some evidence that would
permit the jury rationally to find that, if the defendant is guilty, he or she is guilty only of the lesser
offense. Wesbrook v. State, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000). The evidence presented
would not permit a rational jury to find that, if Jackson was guilty, it was only of the lesser offense. 
The contention is overruled.
            We affirm the judgment.


                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          December 19, 2005
Date Decided:             January 24, 2006

Do Not Publish