# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00624-CR

**James Doyle Rountree, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22nd JUDICIAL DISTRICT
### NO. CR-04-627, HONORABLE JACK ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following a jury trial, appellant James Doyle Rountree was convicted of manufacturing more than 400 grams of methamphetamine. *See* Tex. Health & Safety Code Ann. § 481.112 (West 2003). In two issues on appeal, Rountree asserts that the evidence is legally insufficient to prove: (1) that he knowingly manufactured methamphetamine; and (2) that the aggregate weight of the methamphetamine was equal to or exceeded 400 grams. We will affirm the judgment of the district court.

### BACKGROUND

The jury heard evidence that, on May 24, 2004, after an employee of the Pedernales Electric Cooperative reported that she observed what appeared to be a marihuana plant while servicing utility poles in the area, officers with the Hays County Narcotics Task Force obtained and

executed a search and arrest warrant at 13113 Nutty Brown Road. Detective Lynn Lueders, the lead investigator, testified that Rountree was present inside the residence when the officers arrived.

According to the testimony of Detective Lueders, his team of narcotics officers searched a single-wide trailer, which was the only dwelling on the property. Inside the living area of the trailer, officers located 19 glass and plastic jars of various shapes and sizes partially filled with liquids and oils. Some jars also contained white powder residue. Officers also found a pan with some powder in it, pipettes, "surgical-like tubing," syringes, hot plates, a turkey baster, and a coffee pot with a funnel protruding from the top. Photographs of the property and all of the items were admitted into evidence. Based on his training and experience as a narcotics officer, Lueders testified that he believed the items found in the trailer were "remnants of or was a part of a clandestine meth lab." Detective Todd Rife, who also participated in the search, described the lab as "like a built-in structure inside the living room."

The evidence of drug activity was not confined to the lab area. Another officer involved in the search, Detective Carl Spriegel, testified that in the bedroom he located a box that contained syringes and medicine bottles, and within the bottles "were a few baggies of a substance" that appeared to be methamphetamine. Also inside the trailer officers found a checkbook with Rountree's name on it and mail addressed to Rountree. Further investigation revealed that Rountree's name was on the property's deed records.

Samples from the various seized items were analyzed at the DPS laboratory in Austin. DPS chemist Joel Budge testified that the liquid in four of the jars contained trace amounts of methamphetamine. Three other jars contained powder that tested positive for methamphetamine. Based on the test results and his 24 years' experience as a DPS chemist, Budge was of the opinion

2

that the seized items were part of a methamphetamine laboratory capable of producing methamphetamine and that production was ongoing at the time the police searched the residence.[1]

The jury returned a verdict finding Rountree guilty. At the punishment hearing, the State introduced evidence indicating that Rountree had five felony convictions related to methamphetamine, along with a number of misdemeanors. The district court sentenced Rountree to the statutory minimum of fifteen years' imprisonment. This appeal followed.

## DISCUSSION

**Standard of review**

Rountree's appeal challenges the legal sufficiency of the evidence to sustain his conviction. When there is a challenge to the legal sufficiency of the evidence to sustain a criminal conviction, we consider whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005); *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). We review all the evidence in the light most favorable to the verdict and assume the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the finding. *See Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Johnson*

---

[1] Budge testified that, based on the low concentration of methamphetamine in the solutions, he believed production was in "the second or third extraction" during which most of the methamphetamine has already been removed from the substance and the producers are "trying to get the rest of the methamphetamine out of these layers, because they want to make sure that they get all the meth. They want to get as much meth as they can out of the solutions."

*v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). We consider even erroneously admitted evidence. *Id*.

**Manufacture of methamphetamine**

In his first issue, Rountree challenges, as he puts it, "the legal sufficiency of the evidence to prove he at any time within the Statute of Limitations knowingly manufactured any quantity of methamphetamine." Rountree has failed to preserve error regarding any statute of limitations defense,[2] but we will construe his issue more generally as a challenge to the sufficiency of the evidence that he manufactured methamphetamine. We conclude that the evidence is sufficient to support this finding and that, in fact, a finding that Rountree was continuing to manufacture methamphetamine well within the limitations period. *See* Tex. Code Crim. Proc. Ann. art. 12.01(6) (West Supp. 2005) (three-year limitations period).

To convict a defendant of manufacturing methamphetamine, the State must prove that the defendant was manufacturing methamphetamine at the time of his arrest and prove the aggregate weight of the controlled substance including adulterants and dilutants. *Hardie v. State*, 79 S.W.3d

---

[2] A statute of limitations defense is "forfeited if not asserted at or before the guilt / innocence stage of trial." *Proctor v. State*, 967 S.W.2d 840, 844 (Tex. Crim. App. 1998). As the court of criminal appeals explained:

> Before trial, a defendant may assert the statute of limitations defense by filing a motion to dismiss under Article 27.08(2) of the Texas Code of Criminal Procedure. At trial, the defendant may assert the defense by requesting a jury instruction on limitations if there is some evidence before the jury, from any source, that the prosecution is limitations-barred.

*Id*. There is no evidence in the record that Rountree took either of these actions to preserve error.

625, 631 (Tex. App.—Waco 2002, pet. ref'd). "Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance other than marihuana, directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes the packaging or repackaging or labeling or relabeling of its container. *See* Tex. Health & Safety Code Ann. § 481.002(25) (West 2003). Evidence that shows any of the procedures listed in section 481.002(25) is sufficient to support a conviction of the manufacture of a controlled substance. *Green v. State*, 930 S.W.2d 655, 657 (Tex. App.—Fort Worth 1996, pet. ref'd).

Manufacture of methamphetamine can be established through circumstantial evidence. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985). In this case, the following evidence suggests that Rountree was manufacturing methamphetamine at the time of his arrest: (1) Detective Lueders testified that he believed part of the trailer was a "clandestine meth lab"; (2) deed records, a checkbook with Rountree's name on it, and mail addressed to Rountree linked him to the property; (3) Rountree was discovered inside the trailer at the time of the search; (4) DPS chemist Budge testified that the equipment inside the trailer was capable of manufacturing methamphetamine and was in fact manufacturing methamphetamine at the time of Rountree's arrest; and (5) substances found both in the lab area and in Rountree's bedroom tested positive for methamphetamine.

Viewing this evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Rountree was knowingly manufacturing methamphetamine at the time of his arrest. Furthermore, Rountree was indicted only

three months after his arrest, which resolves any statute-of-limitations concerns. We overrule Rountree's first issue.

**Aggregate weight**

In his second issue, Rountree asserts that the evidence is legally insufficient to prove that the aggregate weight of the methamphetamine was equal to or exceeded 400 grams. Budge testified that in determining the amount of methamphetamine found in the lab, he calculated the weight of the entire solution, including any adulterants or dilutants. Budge testified that the adulterant or dilutant in some of the samples was water and that, in other samples, it "was actually some type of petroleum distillate . . . probably charcoal lighter fluid." Rountree contends that the State was required to prove that the adulterants or dilutants were, by themselves, controlled substances that "increase the size or quantity of the methamphetamine molecule itself." The State responds that adulterants and dilutants "can be present but need not be listed in the controlled substances schedules or the Penalty Groups."

Our resolution of this issue ultimately turns on the construction of the statutes defining "controlled substance" and "adulterant or dilutant." "When we interpret a statute we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation." *Seals v. State*, 187 S.W.3d 417, 419 (Tex. Crim. App. 2005) (citing *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). "We must interpret an unambiguous statute literally, unless doing so would lead to an absurd result that the legislature could not possibly have intended." *Id*.

The statutory definitions at issue here are unambiguous. A "controlled substance" means a substance, including a drug, an adulterant, and a dilutant, listed in Schedules I through V

6

or Penalty Groups 1, 1-A, or 2 through 4. Tex. Health & Safety Code Ann. § 481.002(5) (West 2003). The term includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance. *Id*. "Adulterant or dilutant" means any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the substance. *See* Tex. Health & Safety Code Ann. § 481.002(49) (West 2003).

The court of criminal appeals has previously construed these statutory definitions. In construing section 481.002(5), the court held that the State is not required to determine the amount of controlled substance and the amount of adulterant and dilutant that constitute the mixture. *Melton v. State*, 120 S.W.3d 339, 344 (Tex. Crim. App. 2003). "The State has to prove only that the aggregate weight of the controlled substance mixture, *including adulterants and dilutants*, equals the alleged minimum weight." *Id*. (emphasis added). In construing 481.002(49), the court held that the "literal meaning of the legislature's adulterant and dilutant definition is that *any substance* that is added to or mixed with a controlled substance, regardless of when, how, or why that substance was added, may be added to the aggregate weight of the controlled substance as an adulterant or dilutant." *Seals*, 187 S.W.3d at 420 (emphasis added).

Consistent with the above opinions, we hold that the alleged adulterants or dilutants in this case—water and charcoal lighter fluid—satisfy the plain language of sections 481.002(5) and 481.002(49). Budge testified that the total aggregate weight of the solutions containing methamphetamine, including adulterants and dilutants, was 1,500 grams. Viewing this evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond

a reasonable doubt that the amount of methamphetamine Rountree manufactured was at least 400 grams. We overrule Rountree's second issue.

## CONCLUSION

Having overruled Rountree's issues on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: August 4, 2006

Do Not Publish