COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
 
 




 

 

NO. 02-10-00168-CR

 

 




 
 
 Waymond Eugene Sanders
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 




 

----------

 

FROM THE 213th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

          A
jury found Appellant Waymond Eugene Sanders guilty of possession of cocaine. 
After finding the enhancement paragraphs true, the same jury assessed his
punishment at forty years’ confinement in prison, and the trial court sentenced
him accordingly.  In this appeal, he raises the issue of the legal and factual
sufficiency of the evidence.  After determining the evidence sufficient, we
affirm the judgment of the trial court.

BACKGROUND

          In
March 2009, Fort Worth Police narcotics officers Lopez and Coleman received a
tip from a confidential informant (CI) that Appellant was selling crack cocaine
near a local car wash.  They parked across the street and observed Appellant
make hand-to-hand transactions with different people out of his older model
Cadillac.  Based upon their training and experience and the information from
the CI, they believed that they were observing drug transactions.

Lopez
contacted patrol officers Reese and Green, who were nearby in separate patrol
cars, and told them of his and Coleman’s suspicions, and that they would be
wanting the patrol officers to try to stop Appellant when he left the car wash
location.  The narcotic officers could not make a stop if they observed him
committing a traffic offense because they were in an unmarked vehicle and not
in uniform.

Reese
proceeded to a point near the car wash.  While he watched Appellant’s car, he
saw a young African-American woman open the passenger door, reach in, then close
the door, and walk away.

When
Appellant left the car wash, Lopez and Coleman followed.  They notified Reese
and Green who, in turn, followed them.  Appellant stopped briefly at an auto
detail shop where Lopez and Coleman again observed hand-to-hand transactions
similar to those at the car wash.

He
left this location and they continued to follow.  When Appellant failed to
signal prior to making a right turn, Lopez notified the patrol officers of the
traffic violation.  Reese pulled Appellant over at a convenience store parking
lot.  Green pulled into the lot behind Reese.  He stood near and slightly
behind the passenger door of Appellant’s car to observe Appellant while Reese checked
him out.  Reese obtained Appellant’s driver’s license and proof of insurance and
went to his vehicle to check Appellant’s record.

Green
saw Appellant open the center console, remove a plastic baggie filled with a
rock-like substance, and place it in the front of his pants.  He immediately
made the Appellant get out of the car and retrieved the bag from Appellant’s
pants.  Appellant was placed under arrest for possession of cocaine.

By
the time Reese returned, Green had handcuffed Appellant.  Green showed him a
plastic baggie that he had removed from Appellant’s pants which appeared to contain
cocaine.

Coleman
received the baggie at the scene and subsequently placed it in the police
department’s property room.  At trial he identified State’s Exhibit 2 as the
property control envelope which he had placed the “drug items” in and then sealed. 
After opening the envelope in the courtroom, Coleman identified its contents as
the cocaine that Green had given him at the traffic stop.

          Sharon
Patton, a forensic scientist, analyzed the drugs after receiving the contents
of State’s Exhibit 2 from the city property room on April 2, 2009.  She
testified that the evidence consisted of two baggies, packaged as one baggie
within another baggie.  After analyzing the substance, she concluded that it
contained 2.51 grams of cocaine, which would include adulterants and dilutants. 
The evidence consisted of one larger rock in one baggie, and several tinier
pieces in the other baggie.  The outer plastic baggie contained 1.37 grams, and
the inner baggie contained multiple pieces totaling 1.14 grams.

The
defense called the CI,[2] who had originally contacted
the narcotic officers, as a witness.  The CI testified that he had lied to the
officers when he told them that Appellant was a drug dealer.  He had thought
that Appellant had been abusing his daughter, but he later found out that it
was someone else who had been abusing his daughter.  He realized that he had
the wrong man about three weeks to a month after he gave the information to the
officers.

The
CI also testified that he was in the vehicle with the narcotic officers when
they drove past the traffic stop, and he saw Appellant get out of his car and
start walking toward the store.  At the same time, the CI saw a baggie which he
claimed was already on the ground near where Appellant was walking.  The CI did
not tell the officers this at the time because he had wanted Appellant to go to
jail for what he had done to his daughter.  The CI also claimed to have
overheard, on what he described as a “walkie talkie,” the officers say that
they had not found any drugs in the car nor on Appellant.

In
cross-examination, it was brought out that the CI had several felony
convictions.  The CI admitted that he had been contacted by Appellant’s brother
and that possibly he had run into Appellant.  The CI denied that this had anything
to do with his testifying.

In
rebuttal, the State called all of the officers back to testify.  Both patrol
officers testified that the CI was not at the scene when Appellant was stopped
and arrested.  They denied that Appellant had gotten out of the car before
being pulled out by Green.

Narcotics
officer Coleman testified that he had met the CI for the first time the day of
the arrest and that Lopez was the CI’s main contact.  They had picked the CI up
at his home, and he went with them to try to locate and identify Appellant. 
They had finally located Appellant at the car wash.  The officers had taken the
CI back to his home after he identified Appellant and then returned to do the
surveillance.  The CI had told them that he knew Appellant well because he had
dealt drugs with him in the past.  Coleman also explained that he never takes the
CI near an active investigation because doing so would compromise the identity
of the informant.

Narcotics
officer Lopez testified that he had initially made contact with the CI by
phone.  The CI had wanted to have Appellant arrested because he had something
to do with the CI’s daughter getting beaten up, causing her to take refuge in a
shelter.  They had picked the CI up, and he had shown them the car wash where
Appellant sold crack cocaine.  They had then taken the CI back to his home.  The
CI was not at the scene of the surveillance nor the arrest because they did not
want to compromise him as an informant or let anyone know their procedures.  The
CI had called him after the arrest and wanted their help.  The CI claimed
Appellant had contacted him and wanted him to try to set up some sort of a
defense.

APPELLANT’S
CONTENTION

          Appellant
contends that the evidence is neither factually nor legally sufficient because:
 1) reasonable doubt existed as to whether the substance tested was the same
substance recovered from the arrest; 2) possession was in doubt because officer
Reese’s testimony describing when he first saw the baggie containing the
cocaine was weak and inconsistent, and the CI testified that the baggie was on
the ground before the arrest; and 3) although the narcotics officers denied that
the CI was in the car during the surveillance, they never said he was
not in the car when Appellant was arrested.

APPLICABLE
LAW

          The
Texas Court of Criminal Appeals has determined that there is no meaningful
distinction between the legal sufficiency standard and the factual sufficiency
standard.  Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)
(overruling Clewis v. State, 922 S.W.2d 126, 131–32 (Tex. Crim. App.
1996)).  Thus, the Jackson standard is the “only standard that a
reviewing court should apply in determining whether the evidence is sufficient
to support each element of a criminal offense that the State is required to
prove beyond a reasonable doubt.”  Id. at 895.

          When
evaluating the sufficiency of the evidence, all of the evidence should be
reviewed in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the offense
to have been proven beyond a reasonable doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d
772, 778 (Tex. Crim. App. 2007).

ANALYSIS

Applying
the sufficiency standard of review set forth above in Jackson and Clayton,
we hold that a rational jury, based upon our review of the record in this case in
the light most favorable to the verdict, could have determined beyond a
reasonable doubt that the substance tested was cocaine in an amount as alleged
in the indictment and was in Appellant’s possession when he was arrested.

It
is clear from the record that when the officers testified that they found a
bag, it was a bag within a bag, as the chemist testified.  The jury
could have also determined that the CI’s testimony was not credible and the
officers’ testimonies were credible when they testified that the CI had been
taken home before the surveillance and was not present during the subsequent
arrest.  Therefore, the jury could have concluded that it was impossible for the
CI to have seen a baggie already on the parking lot or to have seen Appellant
walking toward the store prior to his arrest.  The jury, as the trier of fact,
is the sole judge of the weight and credibility of the evidence.  See Tex.
Code Crim. Proc. Ann. art. 38.04 (West 1979); Brown v. State, 270 S.W.3d
564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075 (2009).

Regarding
Appellant’s claim concerning the chain of custody and whether all the substance
in State’s Exhibit 2 was crack cocaine, it is well established that once the
evidence is shown to have been received by the laboratory, any further
objection goes to the weight of the evidence, not to its admissibility.  See
Menefee v. State, 928 S.W.2d 274, 280 (Tex. App.—Tyler 1996, no pet.). 
Here, the jury could have reasonably believed, from the above testimony, that
the chemist retrieved the evidence from the property room where it had been
deposited by officer Coleman.

The
State is not required to test each piece of suspected rock cocaine in order to
establish that it contained cocaine.  See Melton v. State, 120 S.W.3d
339, 343–44 (Tex. Crim. App. 2003).  Based upon the testimony of Sharon Patton
and the exhibits admitted at trial, the jury reasonable could have concluded
that the entire amount of the suspected substance was cocaine.  We overrule
Appellant’s sole point.  See id.  The judgment of the trial court is
affirmed.

PER CURIAM

 

PANEL: 
CHARLES HOLCOMB
(Senior Justice, Retired, Sitting by Assignment); LIVINGSTON, C.J.; and
GABRIEL, J.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  July 7, 2011









[1]See Tex. R. App. P. 47.4.





[2] Prior to testifying, the
trial court appointed counsel for the CI, and in an in camera hearing made sure
that he understood his situation.