

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00168-CR

WAYMOND EUGENE SANDERS                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

## FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury found Appellant Waymond Eugene Sanders guilty of possession of cocaine. After finding the enhancement paragraphs true, the same jury assessed his punishment at forty years' confinement in prison, and the trial court sentenced him accordingly. In this appeal, he raises the issue of the legal and factual sufficiency of the evidence. After determining the evidence sufficient, we affirm the judgment of the trial court.

---

[1]*See* Tex. R. App. P. 47.4.

# BACKGROUND

In March 2009, Fort Worth Police narcotics officers Lopez and Coleman received a tip from a confidential informant (CI) that Appellant was selling crack cocaine near a local car wash. They parked across the street and observed Appellant make hand-to-hand transactions with different people out of his older model Cadillac. Based upon their training and experience and the information from the CI, they believed that they were observing drug transactions.

Lopez contacted patrol officers Reese and Green, who were nearby in separate patrol cars, and told them of his and Coleman's suspicions, and that they would be wanting the patrol officers to try to stop Appellant when he left the car wash location. The narcotic officers could not make a stop if they observed him committing a traffic offense because they were in an unmarked vehicle and not in uniform.

Reese proceeded to a point near the car wash. While he watched Appellant's car, he saw a young African-American woman open the passenger door, reach in, then close the door, and walk away.

When Appellant left the car wash, Lopez and Coleman followed. They notified Reese and Green who, in turn, followed them. Appellant stopped briefly at an auto detail shop where Lopez and Coleman again observed hand-to-hand transactions similar to those at the car wash.

He left this location and they continued to follow. When Appellant failed to signal prior to making a right turn, Lopez notified the patrol officers of the traffic

violation. Reese pulled Appellant over at a convenience store parking lot. Green pulled into the lot behind Reese. He stood near and slightly behind the passenger door of Appellant's car to observe Appellant while Reese checked him out. Reese obtained Appellant's driver's license and proof of insurance and went to his vehicle to check Appellant's record.

Green saw Appellant open the center console, remove a plastic baggie filled with a rock-like substance, and place it in the front of his pants. He immediately made the Appellant get out of the car and retrieved the bag from Appellant's pants. Appellant was placed under arrest for possession of cocaine.

By the time Reese returned, Green had handcuffed Appellant. Green showed him a plastic baggie that he had removed from Appellant's pants which appeared to contain cocaine.

Coleman received the baggie at the scene and subsequently placed it in the police department's property room. At trial he identified State's Exhibit 2 as the property control envelope which he had placed the "drug items" in and then sealed. After opening the envelope in the courtroom, Coleman identified its contents as the cocaine that Green had given him at the traffic stop.

Sharon Patton, a forensic scientist, analyzed the drugs after receiving the contents of State's Exhibit 2 from the city property room on April 2, 2009. She testified that the evidence consisted of two baggies, packaged as one baggie within another baggie. After analyzing the substance, she concluded that it contained 2.51 grams of cocaine, which would include adulterants and dilutants.

3

The evidence consisted of one larger rock in one baggie, and several tinier pieces in the other baggie. The outer plastic baggie contained 1.37 grams, and the inner baggie contained multiple pieces totaling 1.14 grams.

The defense called the CI,[2] who had originally contacted the narcotic officers, as a witness. The CI testified that he had lied to the officers when he told them that Appellant was a drug dealer. He had thought that Appellant had been abusing his daughter, but he later found out that it was someone else who had been abusing his daughter. He realized that he had the wrong man about three weeks to a month after he gave the information to the officers.

The CI also testified that he was in the vehicle with the narcotic officers when they drove past the traffic stop, and he saw Appellant get out of his car and start walking toward the store. At the same time, the CI saw a baggie which he claimed was already on the ground near where Appellant was walking. The CI did not tell the officers this at the time because he had wanted Appellant to go to jail for what he had done to his daughter. The CI also claimed to have overheard, on what he described as a "walkie talkie," the officers say that they had not found any drugs in the car nor on Appellant.

In cross-examination, it was brought out that the CI had several felony convictions. The CI admitted that he had been contacted by Appellant's brother

---

[2] Prior to testifying, the trial court appointed counsel for the CI, and in an in camera hearing made sure that he understood his situation.

and that possibly he had run into Appellant. The CI denied that this had anything to do with his testifying.

In rebuttal, the State called all of the officers back to testify. Both patrol officers testified that the CI was not at the scene when Appellant was stopped and arrested. They denied that Appellant had gotten out of the car before being pulled out by Green.

Narcotics officer Coleman testified that he had met the CI for the first time the day of the arrest and that Lopez was the CI's main contact. They had picked the CI up at his home, and he went with them to try to locate and identify Appellant. They had finally located Appellant at the car wash. The officers had taken the CI back to his home after he identified Appellant and then returned to do the surveillance. The CI had told them that he knew Appellant well because he had dealt drugs with him in the past. Coleman also explained that he never takes the CI near an active investigation because doing so would compromise the identity of the informant.

Narcotics officer Lopez testified that he had initially made contact with the CI by phone. The CI had wanted to have Appellant arrested because he had something to do with the CI's daughter getting beaten up, causing her to take refuge in a shelter. They had picked the CI up, and he had shown them the car wash where Appellant sold crack cocaine. They had then taken the CI back to his home. The CI was not at the scene of the surveillance nor the arrest because they did not want to compromise him as an informant or let anyone know their

5

procedures. The CI had called him after the arrest and wanted their help. The CI claimed Appellant had contacted him and wanted him to try to set up some sort of a defense.

## APPELLANT'S CONTENTION

Appellant contends that the evidence is neither factually nor legally sufficient because: 1) reasonable doubt existed as to whether the substance tested was the same substance recovered from the arrest; 2) possession was in doubt because officer Reese's testimony describing when he first saw the baggie containing the cocaine was weak and inconsistent, and the CI testified that the baggie was on the ground before the arrest; and 3) although the narcotics officers denied that the CI was in the car during the *surveillance*, they never said he was not in the car when Appellant was *arrested.*

## APPLICABLE LAW

The Texas Court of Criminal Appeals has determined that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)). Thus, the *Jackson* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Id.* at 895.

When evaluating the sufficiency of the evidence, all of the evidence should be reviewed in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense to have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

**ANALYSIS**

Applying the sufficiency standard of review set forth above in *Jackson* and *Clayton*, we hold that a rational jury, based upon our review of the record in this case in the light most favorable to the verdict, could have determined beyond a reasonable doubt that the substance tested was cocaine in an amount as alleged in the indictment and was in Appellant's possession when he was arrested.

It is clear from the record that when the officers testified that they found a bag, it was a bag *within* a bag, as the chemist testified. The jury could have also determined that the CI's testimony was not credible and the officers' testimonies were credible when they testified that the CI had been taken home before the surveillance and was not present during the subsequent arrest. Therefore, the jury could have concluded that it was impossible for the CI to have seen a baggie already on the parking lot or to have seen Appellant walking toward the store prior to his arrest. The jury, as the trier of fact, is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West

7

1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009).

Regarding Appellant's claim concerning the chain of custody and whether all the substance in State's Exhibit 2 was crack cocaine, it is well established that once the evidence is shown to have been received by the laboratory, any further objection goes to the weight of the evidence, not to its admissibility. *See Menefee v. State*, 928 S.W.2d 274, 280 (Tex. App.—Tyler 1996, no pet.). Here, the jury could have reasonably believed, from the above testimony, that the chemist retrieved the evidence from the property room where it had been deposited by officer Coleman.

The State is not required to test each piece of suspected rock cocaine in order to establish that it contained cocaine. *See Melton v. State*, 120 S.W.3d 339, 343–44 (Tex. Crim. App. 2003). Based upon the testimony of Sharon Patton and the exhibits admitted at trial, the jury reasonable could have concluded that the entire amount of the suspected substance was cocaine. We overrule Appellant's sole point. *See id.* The judgment of the trial court is affirmed.

PER CURIAM

PANEL: CHARLES HOLCOMB (Senior Justice, Retired, Sitting by Assignment); LIVINGSTON, C.J.; and GABRIEL, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 7, 2011