Affirmed and Opinion filed August 24, 2006








Affirmed and Opinion filed August 24, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00662-CR

____________

 

RONALD KEITH GRAHAM, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 23rd
District Court

Brazoria County, Texas

Trial Court Cause No. 48,023

 



 

O P I N I O N

Appellant Ronald Keith Graham challenges the legal
sufficiency of the evidence supporting his conviction for possession of a
controlled substance (methamphetamine) weighing at least 400 grams.  Appellant
also asserts that the trial court erred in denying his motion to suppress, and
in refusing his request for an exclusionary-rule jury instruction.  We affirm. 








I.  Factual and Procedural
Background

In January 2004, Detective Clark of the Harris County
Sheriff=s Department
seized a methamphetamine lab located on Main Street in Houston.  Around this
same time, Detective Clark observed a dark blue Ford pickup truck with a bright
orange tailgate parked outside this lab.  Detective Clark discovered that this
truck was registered to appellant, who was apparently known as AThe Professor@ in the illegal
narcotics community.  Appellant was not present at the time the Main Street lab
was seized, but his girlfriend, Tania Nieves was arrested in that seizure. 
Detective Clark learned that the Texas Board of Pardons and Paroles had issued
a felony arrest warrant for appellant based on an alleged parole violation. 

Upon further investigation, Detective Clark located Nieves= residence at a
motel in Manvel, Texas.  On April 20, 2004, in an attempt to find appellant,
Detective Clark followed Nieves from the motel to a travel trailer located
behind a concrete plant near Highway 6 in Manvel.  Detective Clark spotted
appellant=s truck outside the trailer and contacted Sergeant
Floyd Goodwin of the Texas Department of Public Safety and Deputy Tony Pena of
the Brazoria County Sheriff=s Department.  Sergeant Goodwin and Deputy
Pena immediately joined Detective Clark at the scene to conduct a felony
arrest.  Sergeant Goodwin and Detective Clark approached the trailer and
announced, APolice, arrest warrant, open the door.@  There was no
response, but the door was partially open and Detective Clark called out,
stating, AMr. Graham, open the door.  Ronald Graham, open the
door.@  Detective Clark
saw a head rise from a bed adjacent to the door, and he immediately recognized
appellant from the parole photograph.  Upon identifying appellant, Detective
Clark and Sergeant Goodwin pushed the front door open and entered the residence
to make the arrest.  The officers conducted a protective sweep of the trailer,
and during this time, saw what appeared to be a clandestine methamphetamine
laboratory. 








After arresting and handcuffing appellant, the officers
escorted him back to the patrol car to request consent from appellant to search
the trailer.  Sergeant Goodwin advised appellant of his rights.  When asked,
appellant indicated he knew how to read and Sergeant Goodwin read to him from a
consent-to-search-form, and also removed the handcuffs from appellant so that
appellant could read the document himself.  Sergeant Goodwin then asked
appellant if the officers could search the trailer, and appellant responded, AWhy not?  When you=re done, you=re done.@  After reading
the consent-to-search form, appellant stated that he understood his rights and
signed the document.  The officers then searched the trailer and its contents,
discovering several containers that they suspected contained methamphetamine or
were chemicals that were precursors in the production of methamphetamine.  

Appellant was charged in a two-count indictment with the
first-degree felony of possession of a controlled substance, and with the
second-degree felony of possession of chemicals with the intent to manufacture
methamphetamine.

Before trial, appellant filed a motion to suppress the
evidence obtained in the search.  The trial court denied the motion and trial
commenced.  A jury found appellant guilty as charged on both counts.  The trial
court, in a separate punishment proceeding, assessed a sentence of forty-five
years= confinement and a
$10,000.00 fine in count one, and twenty years= confinement, with
a $5,000.00 fine in count two. 

II.  Issues Presented

Appellant asserts three issues on appeal: 

(1)     The trial court erred in denying his
pre-trial motion to suppress the evidence obtained in the search of the
trailer. 

(2)     The trial court erred in denying appellant=s proposed jury instruction that
the consent to search was involuntary. 

(3)     The evidence is legally insufficient to
support appellant=s conviction for possession of
methamphetamine, in an amount of at least 400 grams. 








III.  Analysis 

 

A.      Is the evidence legally
sufficient to support appellant=s conviction? 

 

We address appellant=s
legal-sufficiency challenge (third issue) first. In evaluating a
legal-sufficiency challenge, we view the evidence in the light most favorable
to the verdict.  Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App.
2000).  The issue on appeal is not whether we, as a court, believe the State=s evidence or
believe that appellant=s evidence outweighs the State=s evidence.  Wicker
v. State, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984).  The verdict may not
be overturned unless it is irrational or unsupported by proof beyond a
reasonable doubt. Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App.
1991).  The jury, as the trier of fact, Ais the sole judge
of the credibility of the witnesses and of the strength of the evidence.@  Fuentes v.
State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The jury may choose to
believe or disbelieve any portion of the witnesses= testimony.  Sharp
v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  When faced with
conflicting evidence, we presume the trier of fact resolved conflicts in favor
of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim.
App. 1993).  Therefore, if any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt, we must affirm.  McDuff
v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).








Appellant challenges his conviction on the grounds that the
evidence allegedly does not show that he possessed at least 400 grams of a
controlled substance, namely methamphetamine.  To convict a defendant for
possession of a controlled substance, the State must show that the defendant
knowingly or intentionally possessed the controlled substance. Seals v.
State, 187 S.W.3d 417, 419 (Tex. Crim. App. 2005).  A controlled substance
is defined as Aa substance, including a drug, an adulterant, and a
dilutant, listed in Schedule I through V or Penalty Groups 1, 1‑A, or 2
through 4.@  Id. (citing  Tex. Health & Safety Code Ann. ' 481.002(5)
(Vernon Supp. 2005)); see also Chapman v. United States, 500 U.S. 453,
460, 111 S.Ct. 1919, 1925, 114 L.Ed.2d 524 (1991).  A controlled substance
includes the aggregate weight of any mixture, solution, or other substance
containing a controlled substance.  Seals, 187 S.W.3d at 419.  Section
481.002(49) of the Texas Health and Safety Code defines adulterant or dilutant
as Aany material that
increases the bulk or quantity of a controlled substance, regardless of its
effect on the chemical activity of the controlled substance.@  Tex. Health & Safety Code Ann. ' 481.002(49).

In this case, the indictment alleged as follows: 

that RONALD KEITH GRAHAM
hereinafter styled Defendant, on or about the 20th day of April 2004, did then
and there intentionally and knowingly possess a controlled substance listed in
Penalty Group One (1) namely, methamphetamine and the amount of said controlled
substance, by aggregate weight, including any adulterants and dilutants, at
least four hundred (400) grams . . . .(emphasis added).

Appellant contends that the evidence is legally
insufficient because the State failed to establish how much of the substance
was actually methamphetamine.  He relies on the following testimony from Minh
Nguyen, a chemist with the Texas Department of Public Safety, to show that he
did not possess at least 400 grams:

[Appellant=s counsel]:        Bthose samples, they=re all listed here in your report.
And it hasBseems to have a B

[Mr. Nguyen]:                  Under
1 percent. 

[Appellant=s counsel]:        Okay. So they
all say methamphetamine; and then it has under 1 percent. Can you explain what
that means?

[Mr. Nguyen]:                  What
we do is this amount you divide by the total weight, and you have the 100 to
your less than 1 percent. That why we write that. 

[Appellant=s counsel]:        Okay. So, that,
basically, is meaningBsaying that=s less thanBthat sample, even though it=s 1.07 kilograms, it=s less than 1 percent
methamphetamine. 








[Mr. Nguyen]:                  Yes.


          Appellant
contends that this testimony demonstrates that the actual methamphetamine in
the solutions was less than one percent of the solution, and because one
percent of 18,636.10 grams is 186.361 grams, he did not possess at least 400
grams of methamphetamine.  First, it is not clear based on the testimony that
Nguyen meant every solution tested contained only one percent, or only some of
them.[1] 
In addition, when asked whether the person who possessed these mixtures
possessed at least 400 grams of methamphetamine, Nguyen answered
affirmatively.  








Next, even if the mixtures contained other liquids, the
State is no longer required to determine the amount of controlled substance and
the amount of adulterant and dilutant that constitute the mixture.  See
Seals, 187 S.W.3d at 420 (overruling the requirement Athat the State
prove intent to increase the bulk or quantity of the controlled substance@); see also
Jones v. State, __S.W.3d__, No. 2-05-026-CR, 2006 WL 1030221, at *4 (Tex.
App.CFort Worth Apr.
20, 2006) (following Seals and holding that the weight of an adulterant
or dilutantCi.e., the bleachC must be added to
the aggregate weight of the controlled substance regardless of whether the
bleach was used or intended to increase the bulk of the controlled substance); 
Erskine v. State, 191 S.W.3d 374, 378 (Tex. App.CWaco 2006, no
pet.) (holding that lab analyst testimony that net weight of rocks seized near
defendant=s car was 5.06 grams and that they contained cocaine,
was sufficient to support conclusion that defendant possessed a controlled
substance in aggregate weight, including adulterants or dilutants, of four
grams or more but less than 200 grams).  Thus,  Aany substance that
is added to or mixed with a controlled substance, regardless of when, how, or
why that substance was added, may be added to the aggregate weight of the
controlled substance as an adulterant or dilutant.@  Seals,
187 S.W.3d at 420; accord Melton v. State, 120 S.W.3d 339, 343 (Tex.
Crim. App. 2003).[2] 
The State need only prove that the controlled substance, including any
adulterants or dilutants, equals the minimum weight set forth in the
indictment. Melton, 120 S.W.3d at 343;  Isassi v. State, 91 S.W.3d
807, 810 (Tex. App.CEl Paso 2002, pet. ref=d).  








In this case, at least 21 liquids tested, marked as
exhibits, and introduced into evidence contained methamphetamine and
adulterants and dilutants.  A chemist so testified, and also testified to the
weight of the liquid in each of the containers testing positive for
methamphetamine.  The aggregate weight of the controlled substance was derived
by adding the weights of each of the liquids that contained methamphetamine. 
The State did not have to establish the weight of the Apure@ methamphetamine
in each jar of liquid versus the weight of any of the liquid that was an
adulterant or dilutant, but only that the aggregate weight of the controlled
substance mixture equaled the alleged minimum weight.  See Melton, 120
S.W.3d at 344.  The State satisfied this burden.  A rational trier of fact could
have found beyond a reasonable doubt that appellant possessed a controlled
substance Aby aggregate weight, including adulterants or
dilutants, of at least 400 grams.@  See Melton,
120 S.W.3d at 344.  Thus, the evidence is legally sufficient to support
appellant=s conviction. We overrule appellant=s third issue.

B.      Did the
trial court err in denying appellant=s pre-trial motion
to suppress?

In his first issue, appellant contends that the trial court
abused its discretion in denying his pre-trial motion to suppress the evidence
seized during the search of the trailer.  We review the trial court=s ruling on a
motion to suppress under an abuse‑of‑discretion standard.  Long
v. State, 823 S.W.2d 259, 277 (Tex. Crim. App. 1991).  A trial court=s ruling on a
motion to suppress, if supported by the record, will not be overturned.  Brooks
v. State, 76 S.W.3d 426, 430 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  At a suppression hearing, the trial court is the sole
finder of fact and is free to believe or disbelieve any or all of the evidence
presented.  Id.  We give almost total deference to the trial court=s determination of
historical facts that depend on credibility and demeanor, but we review de novo
the trial court=s application of the law to the facts if
resolution of those ultimate questions does not turn on the evaluation of
credibility and demeanor.  See Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997).

When, as in this case, the trial court fails to file
findings of fact, we view the evidence in the light most favorable to the trial
court=s ruling and
assume that the trial court implicitly made findings of fact that support its
ruling as long as those implied findings of fact are supported by the record.  State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  Because the trial
judge was free to believe any or all evidence presented and to make a
determination of historical facts supported by the record after evaluating the
credibility and demeanor of the witnesses at the hearing, we give the trial
court=s decision
deference.  See Guzman, 955 S.W.2d at 89.








Both the Fourth Amendment of the United States Constitution
and Article I, Section 9 of the Texas Constitution forbid unreasonable searches
and seizures.  See Brimage v. State, 918 S.W.2d 466, 500 (Tex. Crim.
App. 1996); see also Mincey v. Arizona, 437 U.S. 385, 392, 98 S.Ct.
2408, 57 L.Ed.2d 290 (1978).  This concept is so fundamental that the law
imposes a duty to exclude evidence seized in illegal invasions, both to
discourage lawless police conduct, and because courts may not endorse lawless
invasions of citizens= constitutional rights by permitting the
government unhindered use of the fruits of such invasions.  See Terry v.
Ohio, 392 U.S. 1, 12‑13, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Warrantless searches are unreasonable per se unless they fall under one of a
few specific exceptions.  See Reasor v. State, 12 S.W.3d 813, 817 (Tex.
Crim. App. 2000); see also Mincey, 437 U.S. at 390.  Consent to search
is one of the well‑established exceptions to the constitutional
requirements that a police officer have both a warrant and probable cause
before a search.  Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct.
2041, 36 L.Ed.2d 854 (1973).

Appellant contends that he did not voluntarily consent to
the search.  At the suppression hearing, he testified that he did not realize
he signed a consent-to-search form because an officer had him sign the document
while his hands were still handcuffed behind his back.  Appellant=s girlfriend,
Tania Nieves testified that when she returned to the trailer, she saw appellant
wearing handcuffs and observed the officers helping him sign something. 








Sergeant Goodwin and Deputy Pena also testified at the
suppression hearing.  Giving his account, Sergeant Goodwin stated that he
advised appellant of his rights, and asked him if he could read.  When
appellant responded that he understood his rights and could read, Sergeant
Goodwin obtained a consent-to-search form from Deputy Pena, read the form to
appellant, and removed the handcuffs from appellant so that appellant could
read the document himself.  Sergeant Goodwin asked appellant if the officers
could search the trailer, and appellant stated, AWhy not?  When you=re done, you=re done.@  According to
Sergeant Goodwin=s testimony, after reading the document,
appellant stated that he understood his rights and signed the consent-to-search
form.  Deputy Pena corroborated this testimony, and also stated that appellant
was very cooperative and no force was used to make him sign the document. 

Although the federal constitution requires the State to
prove the voluntariness of consent only by a preponderance of the evidence, the
Texas Constitution requires the State to prove by clear and convincing evidence
that consent to search was freely given.  Reasor v. State, 12 S.W.3d
813, 818 (Tex. Crim. App. 2000).  To be valid, a consent to search must be
positive and unequivocal, and must not be the product of duress or coercion,
either express or implied.  Id. at 818; Allridge v. State, 850
S.W.2d 471, 493 (Tex. Crim. App. 1991).  The trial court must look at the
totality of the circumstances surrounding the statement of consent in order to
determine whether consent was given voluntarily. Reasor, 12 S.W.3d. at
818.  A showing that a suspect has been warned that he does not have to consent
to the search and has a right to refuse is of evidentiary value in determining
whether a valid consent was given.  Allridge, 850 S.W.2d at 493.








At a suppression hearing, the trial court determines the
facts and may accept or reject any or all of the evidence presented.  Brooks,
76 S.W.3d at 430.  Appellant=s testimony
clearly conflicts with the testimony of the officers.  When viewing the Atotality of the
circumstances,@ the trial court was free to believe each officer=s testimony and
disbelieve appellant=s testimony.  Johnson, 803 S.W.2d
at 287.  Sergeant Goodwin=s and Deputy Pena=s testimony
clearly shows that appellant=s consent was voluntary.  Compare
Vargas v. State, 18 S.W.3d 247, 254 (Tex. App.CWaco 2000, pet.
ref=d.) (holding that
clear and convincing evidence that accused was not coerced nor under duress
when he consented to the search of the vehicle), with  Moss v. State,
878 S.W.2d 632, 643 (Tex. App.CSan Antonio 1994, pet. ref'd) (holding
State did not meet burden of proof with clear and convincing evidence on
voluntariness of consent where appellant was not given Miranda warnings
or advised of his right to refuse consent and was arrested with guns pointed at
him and five‑year‑old daughter).  Deferring, as we must, to the
trial court=s determinations of credibility and historical facts
when it denied appellant=s motion to suppress, we cannot conclude
that the trial court abused its discretion in determining that appellant=s consent was
voluntary or that the State failed to meet its burden of establishing the
voluntariness of appellant=s consent by clear and convincing
evidence.  Accordingly, we overrule appellant=s first issue.

C.      Did the
trial court err in denying appellant=s proposed jury
instruction that his consent to the search was involuntary?

In his second issue, appellant contends that the trial
court erred in refusing to add the following jury instruction to the court=s charge: 

You are instructed that under our law, applied to this case, any search
of the accused=s premises without voluntary
consent would not be lawful.  Where an officer has physically forced the
accused to sign a written consent to search form, then, under the
circumstances, a search would be unlawful.  If an accused has signed a consent
to search form by his own free will then under the circumstances a search so
made would be lawful. 

Now, if you find from the evidence that any peace officer including
officers Terry Pena or Floyd Goodwin, on the occasion in question, physically
forced the accused to sign a written consent to search form, or if you have
reasonable doubt as such matters that written consent to search was voluntary,
and you will not consider the evidence obtained as a result of the seizure of
such objects on the accused=s premises. 

If you believe beyond a reasonable
doubt that he peace officer obtained the written consent to search from the
accused=s own free will
you may consider the evidence obtained as a result of the seizure of such
objects on the accused=s premises. 

The trial court denied this proposed jury instruction after
concluding that there was no evidence before the jury that suggested that
appellant=s consent to search was involuntary.  Our resolution
of this issue is controlled by article 38.23 of the Texas Code of Criminal
Procedure, which provides, in pertinent part as follows: 








(a) No evidence obtained by an
officer or other person in violation of any provisions of the Constitution or
laws of the State of Texas, or of the Constitution or laws of the United States
of America, shall be admitted in evidence against the accused on the trial of
any criminal case. In any case where the legal evidence raises an issue
hereunder, the jury shall be instructed that if it believes, or has a
reasonable doubt, that the evidence was obtained in violation of the provisions
of this Article, then and in such event, the jury shall disregard any such
evidence so obtained. 

Tex. Code Crim. Proc. Ann. art. 38.23(a)
(Vernon Supp. 2003).  The only question is whether, under the facts of a
particular case, the evidence raises an issue so as to require a jury
instruction.  Murphy v. State, 640 S.W.2d 297, 299 (Tex. Crim. App.
1982).  When no such issue is raised by the evidence, the trial court acts
properly in refusing a request to charge the jury with this instruction.  Id. 
In his appellate brief, appellant contends that the instruction was
necessary because there was evidence that appellant=s consent to the
search was not made freely and voluntarily.  Appellant concedes that he offered
no evidence before the jury concerning the issue of consent; he relies entirely
on Sergeant Goodwin=s testimony that the  officers had drawn
their guns at the time of the arrest.  The mere fact that Sergeant Goodwin used
a weapon during the arrest is not enough to raise a fact issue as to whether
appellant=s subsequent consent to search was voluntary. 
Sergeant Goodwin specifically stated that the officers probably displayed their
guns before making the arrest because the officers were acting on a felony
arrest warrant.  

There was no evidence at trial that appellant refused to
consent or that his consent was not made freely and voluntarily. The only
evidence regarding this issue was raised at the suppression hearing, outside
the presence of the jury.  We conclude there was no fact question concerning
the validity of the search, and the trial court did not err by denying the
requested exclusionary‑rule instruction.  See Brooks v. State, 642
S.W.2d 791, 799 (Tex. Crim. App. 1982).  We overrule appellant=s second issue.








Having overruled all of appellant=s issues, we
affirm the trial court=s judgment. 

 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

 

Judgment rendered
and Opinion filed August 24, 2006.

Panel consists of
Justices Anderson, Edelman, and Frost.

Publish C Tex. R. App. P. 47.2(b).

 









[1]  We note that at least 21 exhibits were admitted into
evidence, each containing methamphetamine, among other liquids.  Nguyen
testified as to the weight of each of these Amixtures,@ and concluded that the total weight was 18,636.10
grams. 





[2]  Melton involved
a single plastic bag containing 35 to 40 rocks of a substance that appeared to
be crack cocaine. 120 S.W.3d at 340. The weight of the bag was 6.4 grams and
the rocks field‑tested positive for cocaine.  Id. The Department
of Public Safety chemist testified that he tested an unspecified number of the
rocks from this bag using an ultraviolet spectrophotometer and a gas
chromatography mass spectrometer and confirmed each contained cocaine.  Id.
at 341.  He testified that the weight of the substance in the bag was 5.77
grams.  Id. at 340.  The court of appeals found the evidence legally
insufficient to prove that the items in the bag included four grams of crack
cocaine because some of the 35 to 40 items may not have contained any cocaine
and concluded that if one of the Arocks@ was composed entirely of a non‑cocaine
substance, then those substances were not adulterants or dilutants and their
weight could not be added to the aggregate weight of the cocaine.  Id.
at 341.  The Court of Criminal Appeals disagreed and held that the court of
appeals should not have treated each rock as a separate controlled substance
but should have treated all the rocks as a mixture because the term Acontrolled substance@ includes the Aaggregate weight of any mixture,
solution, or other substance containing a controlled substance.@  Id. at 343 (quoting Tex. Health & Safety Code Ann. ' 481.002(5)). The Court of Criminal
Appeals concluded it was reasonable for the jury to infer that the 35 to 40
rocks formed a mixture of crack cocaine, even if some of the Arocks@ were composed only of non‑cocaine
substances.  Id. at 343B44.