

# IN THE
# TENTH COURT OF APPEALS

## No. 10-17-00329-CR

**GARY L. TYSON, SR.,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 278th District Court**
**Walker County, Texas**
**Trial Court No. 27985**

## MEMORANDUM OPINION

Gary Tyson appeals from a conviction for delivery of a controlled substance of one gram or more but less than four grams. TEX. HEALTH & SAFETY CODE ANN. § 481.112(c) (West 2010). Tyson complains that the trial court erred by denying his motion for mistrial due to improper testimony regarding extraneous offenses and that the evidence was insufficient for the jury to have found him guilty. Because we find no reversible error, we affirm the judgment of the trial court.

## MOTION FOR MISTRIAL

In his first issue, Tyson complains that the trial court erred by denying his motion for mistrial. Tyson argues that testimony given by a confidential informant that "he always has good dope" was so prejudicial that a mistrial was necessary. While the confidential informant was identifying the exhibit that allegedly contained crack cocaine rocks, the following exchange occurred:

STATE: Did you notice anything about it when he gave it to you?

WITNESS: No. It was just crack.

STATE: Fair enough.

WITNESS: They all look good, some of them better than others, and it was a nice amount for the money. He always has good dope.

DEFENSE: Objection, Your Honor.

COURT: Sustained.

DEFENSE: I would ask that the jury disregard.

COURT: The jury will disregard any side remarks, and ma'am, you will control yourself and you will answer questions, and answer questions only. We don't need any commentary.

WITNESS: Yes, sir.

DEFENSE: I would move for a mistrial.

COURT: That will be denied.

Right after the jury charge conference regarding guilt-innocence, Tyson re-urged his motion for mistrial, which the trial court denied because it found that the instruction to disregard was sufficient to cure any error.

We review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *Archie v. State*, 340 S.W.3d 734, 738-39 (Tex. Crim. App. 2011). Generally, a witness's reference to an extraneous offense is cured by a prompt instruction to disregard. *See Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009) (per curiam). A mistrial should be granted only in cases where the "reference was clearly calculated to inflame the minds of the jury or was of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds." *Id. (*internal citations omitted).

After the witness's non-responsive statement, the trial court promptly gave an instruction to the jury to disregard. "The law generally presumes that instructions to disregard and other cautionary instructions will be duly obeyed by the jury." *Archie*, 340 S.W.3d at 741 (internal citations omitted). There is nothing in the record that indicates that the instruction was not effective in curing any potential prejudice or that the harmful impression left by the statement was "impossible to remove from the jurors' minds" such that a mistrial was the only appropriate remedy. Tyson conceded that the statement was not purposefully elicited by the State, and we agree that the unsolicited comment was not "calculated to inflame the minds of the jury." *Young*, 283 S.W.3d at 854. We conclude that

the trial court did not abuse its discretion in determining that the testimony was not so prejudicial as to require a mistrial. We overrule Tyson's first issue.

## SUFFICIENCY OF THE EVIDENCE

In his second issue, Tyson complains that the evidence was insufficient for the jury to have found that he committed the offense or that the ten rocks found in the baggie constituted one gram or more of cocaine because of what he contends was the State's expert's improper method of testing the rocks. The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial

evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

**SUFFICIENCY RELATING TO THE TRANSACTION**

Tyson first complains that the evidence was insufficient for the jury to find him guilty of delivery of a controlled substance because the informant's testimony was not credible and the poor quality of the video of the transaction taken with the failure of law enforcement to link Tyson to the money renders the evidence insufficient to show that he delivered a controlled substance. His complaint was not briefed as a lack of corroboration of the confidential informant's testimony but to the sufficiency of the evidence as a whole. In his brief to this Court, Tyson did not include any authority relating to what is required relating to confidential informants and corroboration in this issue, so we will address the issue in the manner he presented it in his brief.

RELEVANT FACTS

The informant called Tyson to set up the transaction, stating that she had $200 and "couldn't find nothing" and needed his help. In the call, the individual the informant identified as Tyson verified how much money the informant had to pay and said he would "do it up" and call her back. A location was later agreed upon by the informant and Tyson. The informant and her vehicle were searched by law enforcement prior to her leaving to meet Tyson. The informant was given $200 to complete the transaction. Law enforcement set up a video camera in the front passenger seat of her vehicle which ran from the time it was set up until the informant returned later.

The informant drove to the designated meeting spot where the transaction took place. The informant testified that Tyson "came to the passenger side of my truck, gave me the dope, and I gave him the money." A still photograph made from the video appears to show a package of some kind in Tyson's hand or near his arm. Two officers testified that they saw Tyson approach the vehicle and one saw Tyson's hands go inside the vehicle. Law enforcement did not pursue Tyson after the transaction, so the money was not recovered or otherwise connected to Tyson. Law enforcement was also unable to follow the informant back to their designated meeting place, but the video showed that the informant did not make any stops after the transaction. Upon meeting, the informant gave law enforcement a baggie which contained ten rocks of what appeared to be crack cocaine and was found to no longer be in possession of the money provided to her.

Tyson contends that the evidence was insufficient because the informant was not credible. The informant had been paid for her assistance by law enforcement for some time, although there was no accounting of how much she had been paid and for what. Additionally, the informant was working with law enforcement pursuant to a written agreement which both parties knew she had violated because she had been using illegal substances during the time that she was assisting law enforcement. Tyson also points to a discrepancy in the description of the search of the informant prior to the transaction, which the informant claimed included the removal of clothing and the officer who conducted the search asserted was only a "pat-down." Tyson contends that a "pat-down" was insufficient for law enforcement to determine whether the informant had drugs on her person.

Additionally, Tyson argues that the other evidence merely shows that Tyson put his arms inside the vehicle and had a conversation with the informant. He points to law enforcement's failure to follow him or to attempt to retrieve the money as a failure to show that a delivery of a controlled substance was completed. Tyson further argues that the video recording was not helpful because the sound was not connected to the video recording but was separate, the video recording was upside-down, showed the incorrect date, and the lighting was poor while only showing Tyson putting his arms inside of the informant's vehicle window and conversing with the informant.

ANALYSIS

Viewing all of the evidence in a light most favorable to the judgment and deferring to the jury's determinations regarding credibility, the weight of the testimony, and the facts, which we find were reasonable, we find that the evidence was sufficient for the jury to have found beyond a reasonable doubt that Tyson was guilty of delivery of a controlled substance. We overrule this portion of Tyson's second issue.

SUFFICIENCY RELATING TO THE COCAINE

Tyson also complains that the evidence was insufficient to show that he delivered one gram or more of cocaine to the informant because of the testing methodology used by the State's expert. The rocks were contained in a single baggie. The expert testified that after viewing and weighing the rocks, he scraped a small amount off of each one, combined the scrapings, and tested it for the presence of a controlled substance. The scrapings tested positive for cocaine. Tyson argues that this methodology would make it impossible to show that more than one rock contained cocaine, which would necessitate a finding that he only delivered less than one gram of cocaine.

In *Melton v. State*, the Court of Criminal Appeals has addressed a very similar issue which we believe controls our determination of this portion of Tyson's issue. *Melton v. State*, 120 S.W.3d 339 (Tex. Crim. App. 2003). In *Melton*, the court of appeals had found that the evidence was legally insufficient to establish that the defendant was guilty of possession of the full weight of all of a baggie of rocks of crack cocaine when only several

rocks were actually tested for the presence of cocaine. The Court of Criminal Appeals

reversed, holding in relevant part:

> The fault in the court's point is that it treats each rock as a separate controlled substance, rather than treat all the rocks as a mixture. The term "controlled substance" includes the "aggregate weight of any *mixture*, solution, or other substance containing a controlled substance." TEX. HEALTH & SAFETY CODE ANN. § 481.002 (5) (Vernon 2003) (emphasis added). Here, the jury heard testimony that the rocks of crack cocaine were all found in one bag. The jury was also permitted to inspect the bag and its contents in order to see the similarities in appearance. Therefore, it was reasonable for the jury to infer that the thirty-five to forty rocks composed a mixture of crack cocaine, even if, some of the rocks were, as the court of appeals hypothesized, "composed entirely of noncocaine." Under these circumstances, it would be unnecessary to require the State to test each rock to determine whether it contains cocaine, much in the same way that it would be unnecessary to require the State to prove that each grain of a powdery substance contains cocaine, especially if there were, hypothetically, 350 to 400 rocks instead of thirty-five to forty, all with the same appearance, and all found in the same receptacle. The Legislature did away with the requirement for this sort of hyper-technical analysis when it amended the definition of "adulterant or dilutant." *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002 (49) (Vernon 2003); *Hines v. State*, 976 S.W.2d 912, 913 (Tex. App.—Beaumont 1998, no pet.).

> Under the new Health and Safety Code definition, the State is no longer required to determine the amount of controlled substance and the amount of adulterant and dilutant that constitute the mixture. *See Isassi v. State*, 91 S.W.3d 807, 810 (Tex. App.—El Paso 2002, pet. ref'd); *Williams v. State*, 936 S.W.2d 399, 405 (Tex. App.—Fort Worth 1996, pet. ref'd); TEX. HEALTH & SAFETY CODE ANN. § 481.115. The State has to prove only that the aggregate weight of the controlled substance mixture, including adulterants and dilutants, equals the alleged minimum weight. *See Isassi*, 91 S.W.3d at 810; *Hines*, 976 S.W.2d at 913; TEX. HEALTH & SAFETY CODE ANN. § 481.002 (5) (Vernon 2003). Here, Ramsey tested and confirmed that the rocks contained cocaine, and that the aggregate weight of the rocks was 5.77 grams. Contrary to the finding of the court of appeals, we find that a rational jury could have found that the evidence showed beyond a reasonable doubt that

the plastic bag found in the appellant's possession contained at a minimum, four grams of cocaine.

*Melton*, 120 S.W.3d at 343-44. Here, as in *Melton*, the jury was able to view the actual rocks of cocaine that were contained in one baggie. Additionally, the State's expert testified that the rocks contained in the baggie weighed 2.21 grams, all of the rocks appeared identical in appearance as to their composition, and the rocks were all in contact with each other in the baggie. We find that, like in *Melton*, the evidence was sufficient for the jury to have found that the baggie contained one gram or more of cocaine. We overrule issue two.

## CONCLUSION

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice


Before Chief Justice Gray,
    Justice Davis, and
    Justice Neill
Affirmed
Opinion delivered and filed April 24, 2019
Do not publish
[CR25]

